Russell COLLINS, Jr., Appellant,

v.

Harry STANFORD, Individually and as Next Friend of Stanley Stanford, a Minor, Appellee.

No. 7241.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 4, 1960.

tiff failed to keep a proper lookout and was guilty of contributory negligence in running into the street. The minor plaintiff was a boy five years, eight months and twenty days old. He was exhibited to the jury, but there was no evidence from him as to his mental capacity. On a motion for judgment non obstante veredicto, the trial court disregarded the findings of contributory negligence against the minor child, and rendered judgment on the balance of the issues.

The father of the child, Harry Stanford, did testify about the child's mental capacity. A man was riding in the car with the appellant at the time of the collision, but he did not appear and testify in the case. The appellant testified as to the rate of speed he was going, which testimony was totally contrary to the testimony of a policeman who investigated the accident after the child was hit. The maximum rate of speed that was allowed by law in the City could not have been more than 30 miles per hour. The policeman testified that the appellant slid his wheels for a distance of 96 feet after he hit the child. Evidently the appellant was speeding, but the jury failed to consider this against him.

William G. Washington, Austin, Shields, Jones & Whittington, Dallas, for appellant.

Daugherty, Bruner, Kelsoe & Thorp, Fred Bruner, Jerry Lastelick, Dallas, for appellee.

DAVIS, Justice.

The opinion handed down in this case on August 30, 1960 is withdrawn, and the following opinion is substituted therefor.

Harry Stanford, individually, and as next friend of Stanley Stanford, a minor, sued Russell ·Collins, Jr., for damages as the result of injuries sustained by the minor plaintiff while crossing a street in the City of Richardson, Texas. Trial was before a jury, and in response to Special Issues, the jury found the defendant guilty of various acts of negligence that caused the injuries, and also found that the minor plain-

The appellant brings forward only one point of error in which he complains of the action of the trial court in disregarding the findings of contributory negligence, and in rendering judgment for the appellees. To this point of error the appellee brings forward a cross point of error complaining of the action of the trial court in instructing the jury on the definition of "proximate cause" as used in the charge, and applied to the infant plaintiff. To this cross point the appellant files a reply brief in which he challenges the authority of the appellee to bring the cross point, and says that the same is in violation of Rule 274, Vernon's Ann.Texas Rules of Civil Procedure.

Whether or not the cross point is sufficiently raised, we have made an extra careful study of the evidence in the case, and find that the trial court was disregard-

ing the jury findings of contributory negligence because there was actually no evidence to support such findings. Especially is this true as to the foreseeability of the minor with reference to the particular accident in question. The question of foreseeability is pointed out by the Supreme Court of Texas in the recent decision of Rudes v. Gottschalk, 324 S.W.2d 201, 204, where we find the following:

"Although the court had defined negligence as applied to William Charles Gottschalk as meaning 'the failure to exercise such care as an ordinarily prudent child of his age, intelligence, experience and capacity would have exercised under the same or similar circumstances,' no negligence question was submitted in connection with Special Issue No. 24, but the child was held to the standard of care applicable to an adult.

"It is well settled that where common-law negligence as distinguished from negligence per se is involved, the minor is judged by the standard of a child and not of an adult. Dallas Ry. & Terminal Co. v. Rogers, 147 Tex. 617, 218 S.W.2d 456; Texas & Pacific Ry. Co. v. Crump, 102 Tex. 250, 115 S.W. 26; Texas & Pacific Ry. Co. v. Phillips, 91 Tex. 278, 42 S.W. 852; Missouri, Kansas & Texas Ry. Co. v. Rodgers, 89 Tex. 675, 36 S.W. 243; Gulf, Colorado & Santa Fe Ry. Co. v. McWhirter, 77 Tex. 356, 14 S.W. 26; Evansich v. Gulf, Colorado & Santa Fe Ry. Co., 57 Tex. 123; Government Employees Ins. Co. v. Davis, 5 Cir., 266 F.2d 760; Annotations, 107 A.L.R. 4 and 174 A.L.R. 1082; Restatement of the Law of Torts (Negligence) § 283, Comment (e) relating to children."

The appellant's point is overruled.

Appellee brings forward a counter point of error in which he complains of the action of the trial court in refusing to grant a new trial because the verdict of the jury was manifestly too small and against the greater weight and preponderance of the evidence. In the findings of the jury they found that the medical expenses for the child—past and future—to be $1,250. They found the damages to the child to be only $1,000.

In the trial of the case, Dr. R. K. Barnes testified as to the injuries received by the child. We think it appropriate to quote his testimony as follows:

"Q. Doctor, I will ask you whether or not you are the attending doctor for a young man by the name of Stanley Stanford? A. Yes, sir.

"Q. When did he first become a patient of yours? A. I first saw him in the emergency room at Baylor Hospital on the 20th of September, 1958.

"Q. Would you tell the jury his condition at that time? A. Well, he was seemingly almost stuporous. He would react to questions, but it was difficult to find out very much from him. He seemed to have had some difficulty in answering any of the questions reasonably, even though he had not been unconscious. He was just about as dirty as he could be, and he had severe scalp lacerations. By dirty, I mean muddy. He apparently was on a muddy street when he was hit. He had a severe scalp laceration and had deformities of his right leg and right thigh and left leg.

"Q. All right. Did you later make x-rays and operate on this young man? A. Yes, sir, I did. I took him right on up to the operating room because he had a compound fracture with an extreme deformity of his left leg below the knee, halfway between the knee and the ankle.

"Q. All right. And what about his right leg? A. His right thigh was broken just below the hip joint and was in rather extreme deformity.

"Q. In your operation, did you join those bones? A. The operation was

"what we call a debridement, which means just to clean it up, and actually then because it was compounded, the bones sticking through the flesh, we had to automatically clean it thoroughly and at the same time set it.

"Q. Which bone was sticking through the flesh? A. None at that time, but he had a rather severe laceration. You could see the end of the bone. The bone had come through and retracted.

"Q. And what leg, the left or right? A. The left leg.

"Q. The left leg. All right. You personally operated on the boy? A. Yes, sir.

"Q. And cleaned and set these bones? A. Yes, sir.

"Q. How long was he in the operating room? A. Oh, I don't really know, but I would imagine about two hours.

\*  \*  \*  \*  \*  \*

"Q. Now, was he placed in a plaster of Paris— A. After we set his leg we put a pin in the upper left tibia and then put what we call a double hip spica cast, plaster cast, which is a cast from his chest down, including both legs. We also at the same time set his right thigh and put the right leg in traction."

Dr. Barnes further testified that he would have a permanent shortening of the right leg of two-fifths of an inch. He also testified that this would produce a limp, and the condition might get worse. He further testified that a future operation would be necessary in the event that the shortening of the right leg continued.

The jury in reaching their decision in the case, decided to pay the doctor bills. One of the jurors emphatically stated that if he had known the child would actually get the money he never would have agreed to such a small amount. In fact, the juror testified as follows:

"Q. All right. When you came to the next issue regarding the pain and suffering of the child, did any discussion take place in the jury room regarding who would receive the benefit of the damages? A. Yes, it did.

"Q. All right. Could you tell us just who the jurors discussed would receive the benefit? A. I started this whole deal on that myself, inasmuch as I felt that I didn't want to give one dime if the father was going to be able to take that money and perhaps buy himself a new car with it or something.

"Q. Yes, sir. A. In fact, I insisted that Judge Davenport be asked the question of whether this money would be in trust for the child, or would be at the disposal of the father."

■ From the evidence offered on motion for new trial, we think the trial court committed error in not granting the new trial. Berry v. Lowery, Tex.Civ.App., 266 S.W.2d 917, affirmed in part and reversed in part by the Supreme Court of Texas, 153 Tex. 411, 269 S.W.2d 795; In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. In a very recent case, Kelly et al. v. Hamm-Tex Distributing Company et al., Tex.Civ.App., 337 S.W.2d 608, a judgment was rendered in a case where a minor only 13 years of age was injured in a truck and bicycle accident, in which the jury found that the damages to the child amounted to $50,300. The jury also convicted the minor child of contributory negligence. The Court of Civil Appeals reversed and remanded the cause on the findings of the jury that convicted the minor of contributory negligence.

For these reasons we think it is our duty to reverse and remand the case for new trial.

The appellants or appellees will have 15 days from the date of this opinion in which to file a motion for rehearing.

It is so ordered.