**J. Alvin MILSTEAD, Appellant,**

v.

**Richard J. AYNESWORTH, Appellee.**

**No. 7213.**

Court of Civil Appeals of Texas.

Texarkana.

Dec. 6, 1960.

Rehearing Denied Dec. 27, 1960.

Fulmer, Fairchild & Badders, Nacogdoches, for appellant.

Norman, Rounsaville & Hassell, Jacksonville, Burford, Ryburn & Ford, Clarence A. Guittard, Dallas, for appellee.

FANNING, Justice.

J. Alvin Milstead sued Richard J. Aynesworth for personal injuries resulting from a collision between the body of Milstead and the automobile of Aynesworth. Milstead, accompanied by his 12 year old daughter, Jackie, was hauling a horse in a trailer behind his pick-up truck proceeding along a narrow blacktop road. The horse became restive, and Milstead parked his pick-up trailer at least partly on the pavement (the extent of which it extended onto the pavement was disputed between the parties), and Milstead stood up on the tongue of the trailer to calm the horse, which reared up and apparently appeared likely to jump out of the trailer. According to his own testimony Milstead stepped down from the trailer and then stepped backward toward the center of the road, and according to the great weight and preponderance of the evidence in the case (as we view it) came into contact with the left side of the automobile driven by Aynesworth. The principal fact issues at the trial were whether the Aynesworth car was on the left hand side of the road and whether Milstead was moving backward or standing still at the time of the impact, and whether Aynesworth's car struck Milstead's body or whether Milstead struck Aynesworth's car by stepping into the side of Aynesworth's car. Upon conflicting evidence the jury found Aynesworth guilty of negligence in driving his automobile on the left hand side of the road proximately causing the injuries in question. Also upon conflicting evidence the jury found that Milstead was guilty of contributory negligence on two counts, to-wit, in stepping into the side of defendant's car (Issue No. 19), and in stepping backward without looking (Issue No. 22), and that such acts of negligence were proximate causes of the occurrence in question; the issues dealing with these matters were issues Nos. 19, 20, 21, 22, and 23, and convicted defendant of contributory negligence on two counts proximately causing the occurrence and damages in question, and in view of these findings the trial court rendered a take nothing judgment against plaintiff Milstead. Milstead has appealed.

Appellant presents six points on appeal complaining in essence of the following alleged errors: (1) Jury argument; (2) submission of issues Nos. 22 and 23 over appellant's objection that they were not authorized by the pleadings; (3) that the answers of the jury to special issues Nos. 19, 20, 21, 22, and 23 were not supported by any evidence; (4) that the answers of the jury to special issues Nos. 19, 20, 21, 22, and 23 were so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust; (5) that the trial court erred in not granting and entering judgment in accordance with appellant's motion for judgment n. o. v.; and (6) alleged jury misconduct.

Appellee on pages 8, 9, 10, 11 and 12 of his brief makes a brief summary of his version of the testimony on the liability issues and brief statement of the jury findings thereon, and we quote in part therefrom as follows: (Note: We omit herefrom appellee's numerous specific references to the Statement of Facts and Transcript, as these references may be found in appellee's brief).

" * * * The accident occurred on a narrow asphalt road barely wide enough for two cars to pass. Estimates of the width of the pavement ranged from sixteen to eighteen and a half feet. In places the edges of the

pavement were worn off. On each side was a shoulder not more than three feet wide, which was overgrown with grass, and beyond was a ditch. * * * and see photographs. Appellant Milstead stopped his pick-up truck and trailer with at least part of them on the pavement. He got out of his pickup, stood on the tongue of the trailer, and tried to calm his horse, which was rearing up in the trailer. According to Milstead's own testimony on direct examination, he stepped rapidly down from the tongue of the trailer toward the center of the road because he was afraid the horse was going to lunge and come out of the trailer. The horse did suddenly rear up again and put one of his feet over the top. After he stepped down he still could not tell whether the horse was going to come over the end of the trailer. The horse made a second lunge, so he stepped back again in order to be out of the horse's way if he fell. He was watching the horse and did not look behind him or to the east before he stepped back. The last thing he remembered was stepping back, and he did not know what happened after that. He was unable to say whether he stepped into the side of the car or not, and could not say whether he was moving or still when the accident happened.

"It is also undisputed that Milstead's body came into contact with the side of the Aynesworth car after the front of the car had already passed. There was no damage on the front of Aynesworth's car, or to the left front fender. * * * and see photographs. The evidence of damage closest to the front of the car was the "vent glass" immediately behind the wrap-around windshield, and the chrome strip next to it. * * * and see photographs. There was also a dent in the right rear fender over the rear wheel.

"The only material points of conflict in the testimony were (1) whether the

contact between Milstead's body and the side of Aynesworth's car was. on Milstead's or Aynesworth's side of the road, and (2) whether Milstead was moving or standing still at the time of the impact.

"Aynesworth testified that he was well on his side of the road as he passed Milstead's pickup and trailer. A key fact on this question is the position of the pick-up and trailer with reference to the edge of the pavement. Milstead testified that his right wheels were about two and one-half feet off the road. His daughter Jackie testified that he had pulled off the road and when she opened the door on the right side she had to jump down into the ditch. The photograph identified as Plaintiff's Exhibit 7 shows the position of the pick-up and trailer as Milstead says they were parked at the time of the accident. However, his own witness, Frank Diamond, who was at the scene immediately after the accident, testified that the pick-up and trailer was 'not as far over' as shown on the picture, but that the right wheels were approximately a foot off the pavement. Wynesworth testified that the right wheels of the pickup and trailer were 'just right beside the side of the pavement,' and about three feet from the ditch. *Louis Lane, the police officer who investigated the accident, before the pick-up and trailer were moved, testified positively that all wheels of both the pick-up and trailer were on the pavement and no part of the vehicles were off on the shoulder.* (Emphasis supplied).

"The only witness who testified that Milstead was standing still at the time of the impact was his daughter Jackie, who was twelve years old at the time of the trial. She testified that she was standing up on the right running board of the pick-up and watching her father as he attempted to quiet the horse and saw the car hit him. Although Mil-

stead himself had testified that he had stepped down rapidly from the trailer to be out of the way of the horse if it fell, was watching the horse, and stepped back again when the horse lunged a second time. Jackie testified that her father pulled his handkerchief out of his pocket, then stepped down off the trailer like anybody would, put his feet together, wiped his face off, pulled his hand back to put his handkerchief in his pocket, and was standing still when the car hit him. However, she said that the only part of the car she saw hit him was the "vent glass" on the left side.

"The jury found that Aynesworth was not driving at an excessive speed, was not negligent in failing to stop his vehicle before undertaking to pass Milstead's truck and trailer, that he did not fail to slow down before passing, and that his failure to keep such a lookout as would have been kept by a person of ordinary prudence was not the proximate cause of Milstead's injuries. The only ground of negligence on the part of Aynesworth which the jury found to be a proximate cause of Milstead's injuries was in driving on his left side of the road. The jury found that Milstead negligently failed to pull his truck and trailer onto the shoulder as far as practicably possible, but that such negligence was not a proximate cause of his injuries, that his negligence in stepping into the side of Aynesworth's car, and also his negligence in stepping backward without looking proximately caused his injuries, and further found that he was not negligent in failing to step off the trailer on the south side rather than onto the traveled portion of the road."

Appellant states his version of the facts in great detail in his brief from pages 5 to 19 inclusive, and such version is obviously too long to be quoted here; however, his version of the facts may be found in his brief.

We have carefully examined the entire record in this cause, and hold that there was ample evidence of probative force in the record to support the jury's answers to special issues Nos. 19, 20, 21, 22, and 23. Appellant's third point is overruled.

The evidence was also amply sufficient to support the jury's answers to special issues Nos. 19, 20, 21, 22, and 23.

We have carefully reviewed and considered all of the evidence adduced in the case in the light of the rules announced in the case of In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660, and hold that the answers of the jury to special issues Nos. 19, 20, 21, 22, and 23 are not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Appellant's fourth point is overruled.

In fact it is our considered appraisal of the entire evidence in the case that it greatly preponderates in support of the jury's answers to issues Nos. 19, 20, 21, 22, and 23. It is also our further view that appellant's own testimony in the case, when considered with the unquestioned physical facts shown in the record, would strongly warrant the jury's findings of contributory negligence upon the part of appellant, as well as their findings of proximate cause on these issues.

Appellant's second and fifth points are deemed as not presenting error under the record in this cause and are overruled.

Appellant's sixth point complains of alleged jury misconduct. The statement of facts in the hearing on plaintiff's motion for new trial dealing with alleged jury misconduct contains 149 pages. Three jurors were placed on the stand by appellant, and one by appellee. One of the jurors placed on the stand by appellant gave inconsistent affidavits to appellant and appellee, and these affidavits were admitted in evidence. Another of the jurors placed on the stand by appellant gave an affidavit to appellee

which affidavit was inconsistent with the evidence said juror gave on the witness stand in the hearing on motion for new trial, and this affidavit was also introduced in evidence. It is also our view that the testimony of the juror placed on the stand by appellee materially contradicted the testimony of the three jurors placed on the stand by appellant. It is our considered view that the testimony of the four jurors and the three affidavits introduced in evidence presented material factual inconsistencies for the trial court to pass upon.

This court in State By and Through City Council of Daingerfield v. Walker, Tex.Civ. App., 334 S.W.2d 611, recently reviewed the rules and authorities applicable to trial and appellate courts in granting new trials for jury misconduct under Rule 327, Texas Rules of Civil Procedure. In the Walker case we recognized and applied the following governing principles:

(1) The trial judge has considerable latitude in granting new trials for jury misconduct and only upon a clear showing of abuse of discretion should his decision be reversed.

(2) The trial court is the judge of the credibility of the witnesses and the weight to be given their testimony, and has the right to resolve inconsistencies in their testimony in favor of the verdict.

(3) Where no express findings are filed, the appellate court must presume in support of the trial court's ruling that the trial court construed the testimony of the jurors in the light most favorable to the verdict and found that no misconduct occurred.

(4) Since Rule 327 has done away with the presumption of prejudice, the appellant has the burden of proving by a preponderance of the evidence not only that the alleged misconduct occurred, but that it probably resulted in injury to him.

(5) The mental processes of the jurors will not be considered in the absence of some overt act.

(6) A verdict need not be set aside when one or more jurors merely misconstrued the charge or stated an erroneous interpretation thereof to the jury.

(7) No reversible error is shown unless, after examining the record as a whole, it appears that the misconduct complained of was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

The trial court heard all the evidence regarding the alleged jury misconduct and found none. We believe that this record does not show that the trial court abused its discretion in failing to find jury misconduct.

Furthermore, appellant not only had the burden of proving jury misconduct by a preponderance of the evidence, but also of showing that it probably resulted in injury to him. See Davis v. Damge, Tex.Civ. App., 328 S.W.2d 203, and numerous authorities cited therein.

We are of further view after examining the record as a whole that the alleged jury misconduct complained of by appellant was not reasonably calculated to cause, and probably did not cause, the rendition of an improper judgment in the cause, and did not constitute reversible error. Rule 434, T.R.C.P. Appellant's sixth point is overruled.

Appellant's first point reads as follows: "The trial court's error in overruling the prompt objection of Appellant's counsel to Appellee's counsel's argument to the jury that the witness, Lewis Lane, had said that Jackie Milstead, a witness in Appellant's behalf, had told Lane right after the accident while it was fresh in her mind that she didn't know how the accident happened." Appellee's first and second counterpoints in reply to appellant's first

point read as follows: "1. The trial court properly overruled appellant's objections to the argument of appellee's counsel because such argument was substantially a correct statement of the testimony of the witness Lewis Lane. 2. The record as a whole fails to show that the trial court's ruling on appellant's objection to the argument of appellee's counsel probably caused the rendition of an improper judgment."

Mr. Rounsaville, one of appellee's attorneys, made the following argument to the jury:

"Mr. Lewis Lane says the little girl told him under a condition when she would have had no other motive whatsoever, but fresh in her mind right after the accident, that she didn't know how it happened and she was sitting in the cab."

Counsel for Appellant immediately objected to such argument as follows:

"Your Honor, I am going to object to the last statement there of counsel that Lewis Lane—that the Milstead girl told Lewis Lane that she did not know how the accident happened. That is not in the record. What he said was that she was in the cab but, and she was crying and he asked her no other question. That is the testimony. I will stand on the record."

The court ruled upon the objection as follows:

"Well, I am going to overrule the objection. The gentlemen of the jury will remember the testimony in the case."

Before he made the argument to the jury to which objection was made, Mr. Rounsaville had argued to the jury:

"Now in this particular case I haven't participated up until this time, but nevertheless, I have been sitting over there taking rather copious notes. I have got a whole tablet here of them

as to what the various people said on the witness stand the evidence that has been introduced here."

The testimony of the witness Lane, bearing upon the subject matter of the argument made by appellee's counsel was as follows:

"Q. Did you have any conversation with the little girl? I don't believe she is still in, but do you remember Jackie Milstead? A. Yes, sir.

"Q. Did you talk to her out there? A. Yes, sir, and she said she was in the truck.

"Q. Did you ask her if she saw the accident? A. Yes, sir.

"Q. What did she tell you? A. She said that she was in the pick-up, but she was crying, so I didn't try to question her no further."

Appellant's view of the matter as expressed in his brief is that the argument was subject to the objection made that it was outside of the record and misstated the testimony of the witness Lane, that the action of the trial court in overruling the objection magnified and enhanced the effect of the argument, and that such argument was harmful in that it was an effective method of attacking and destroying the credibility of the witness Jackie Milstead, who had testified that her father was standing still when he was struck by the vent glass or car of Aynesworth, and that under the whole record the alleged error was reasonably calculated to cause and probably did cause the rendition of an improper judgment and constituted reversible error under Rule 434, T.R.C.P.

Appellee in his brief in his first two counterpoints takes the position first that the argument was substantially a correct statement of the testimony of Lane, and that Mr. Rounsaville did not materially misquote such testimony. In this connection appellee argues in his brief that in effect Lane asked Jackie Milstead if she

saw the accident, that in reply thereto she answered that she was in the pick-up, and argues that such an answer was a negative response to Lane's question, with appellee taking the view therefrom that Mr. Rounsaville's argument was justified and did not materially misrepresent the substance of the testimony was at least a fair and not a materially misleading deduction from Lane's testimony in the respect complained of.

Appellee further contends that the record as a whole fails to show that the trial court's ruling on appellant's objection to the jury argument in question probably caused the rendition of an improper judgment and did not constitute reversible error under Rule 434, T.R.C.P. In this connection appellee makes five contentions as follows: (1) appellant has the burden of showing prejudice; (2) the jury probably would have drawn the same inference from Lane's testimony in the absence of the argument in question; (3) Jackie's testimony is refuted by obvious physical facts; (4) Jackie's testimony conflicts with appellant's own version of the accident; and (5) the argument complained of did not influence the verdict.

We quote from appellee's brief with respect to contentions (3), (4), and (5) above referred to (omitting specific references to the Statement of Facts) as follows:

"3. Jackie's testimony is refuted by obvious physical facts.

"There are other circumstances shown by the record which are far more persuasive than Lane's testimony or Mr. Rounsaville's argument, and which probably influenced the jury to reject Jackie's testimony. As appellant says, Jackie was the only witness who testified that Milstead was standing still at the time of the impact. But how can an automobile strike a stationary man with only its left side? Even Jackie admitted that her father came in contact with the side of the Aynes-worth car rather than the front. All of the damage to the Milstead car was to the left side. There was no damage to the front. * * * and see photographs, * * *. There is no indication whatever in the record that Aynesworth veered to his left as he was passing the trailer. Thus, even in the absence of the argument complained of, it is more than likely that the jury would have concluded that Milstead must have been stepping backward at the time of the impact, rather than standing still, as Jackie testified.

"4. Jackie's testimony conflicts with appellant's own version of the accident.

"Another good reason why the jury probably rejected Jackie's testimony is the conflict between her account of the matter and Milstead's own testimony. Jackie testified that while Milstead was still standing on the tongue of the trailer he got his handkerchief out of his pocket, that he stepped down off the trailer in an ordinary unhurried manner, put his feet together, wiped his face, and was in the act of returning his handkerchief to his pocket when struck by Aynesworth's car. On the other hand Milstead himself testified that he got down off the trailer rapidly when the horse reared up and put its foot over the top, that after he got down he was still watching the horse to see whether it was going to come over the top of the trailer, that the horse made a second lunge and he stepped back to be out of the horse's way if it fell, and he did not know what happened after that. Although this testimony may not be expressly contrary to Jackie's testimony that he stepped down unhurriedly and wiped his face, the jury certainly had ample reason to conclude that if he got down because the horse was rearing up, and then stepped back away to be out of its way if it fell, he must have been acting quite hastily and with nothing on his mind but getting away from the

horse, and probably was not standing there wiping his face. Moreover, in view of Milstead's testimony that the last thing he remembered was stepping back and that he stepped back without looking, the jury probably concluded that he was convicted by his own testimony of negligence in stepping back into the side of the passing car without looking. Indeed, it is difficult to see how they could have reached any other conclusion.

"5. Argument complained of probably did not influence verdict.

"Finally, of course, the jury were entitled to consider and probably did consider the fact that Jackie was only twelve years old at the time of trial and that her recollection of the accident was colored by the fact that she had been extremely excited and upset by the whole affair.

"It is submitted that even though, as appellant argues, Jackie's testimony may have been the only direct evidence on the two crucial grounds of contributory negligence found against plaintiff, the record indicates strongly that the jury probably would have made the same findings regardless of the argument complained of.

"It may also be pointed out that this is not one of those cases where the argument was of a highly inflammatory nature or where counsel has brought in new facts not admitted in evidence. The argument was only an attempt to repeat testimony which the jury had heard, and if Mr. Rounsaville did not repeat it correctly, the jury was in as good position as anyone to remember what the testimony had actually been.

Can this Court say that the jury was probably mislead by the argument to such an extent that they abandoned their own direct recollection of the testimony and accepted instead what Mr. Rounsaville told them? It is our impression that juries are influenced far more by evidence than by argument. The chances are that this jury evaluated all the arguments, including that of Mr. Rounsaville, in the light of the testimony as they heard it from the stand, and the argument probably had no influence upon them unless it was in accordance with their own recollection of the evidence.

"For all of the foregoing reasons, it is respectfully submitted that appellant has failed to discharge his burden of showing that but for such argument the jury probably would have reached a different verdict, and no reversible error is shown."

We have carefully considered appellant's first point in the light of the entire record in the case, and have reached the conclusion that the error complained of was one not reasonably calculated to cause, and probably did not cause, the rendition of an improper judgment in the cause, and does not constitute reversible error. Rule 434, T.R.C.P.; Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596; Goforth v. Alvey, 153 Tex. 449, 271 S.W.2d 404; Whitener v. Traders & General Ins. Co., 155 Tex. 461, 289 S.W.2d 233; Traders & General Ins. Co. v. Smith, Tex.Civ.App., 311 S.W.2d 91, wr. ref. n. r. e. Appellant's first point is accordingly respectfully overruled.

The judgment of the trial court is affirmed.