Shirley A. KAUFMAN, Appellant,

v.

Louis S. MILLER, Appellee.

No. 6813.

Court of Civil Appeals of Texas.

Beaumont.

June 23, 1966.

John H. Benckenstein, Beaumont, for appellant.

John T. Lindsey, Port Arthur, Payton Covington, Lake Charles, La., for appellee.

PARKER, Justice.

This is a common law damage suit for personal injuries brought by Louis S. Miller against Shirley A. Kaufman. The court submitted the case to the jury on special issues. Based upon the verdict of the jury, the court entered judgment in favor of the plaintiff Miller against the defendant Kaufman for $25,000.00. The plaintiff below, Miller, will be called plaintiff. The defendant below, Shirley A. Kaufman, will be called defendant.

This cause of action arose from a motor collision which occurred on the 15th day of July, 1961, on a clear day at 2:30 p. m. It occurred at the intersection of IH 10, sometimes known as Highway 90, and Pine Street within the City Limits of Beaumont, Texas, between an automobile driven by defendant and a motor truck of the Herring Transportation Company driven by the plaintiff. The motor truck was traveling east in the direction of Lake Charles on the outside or southern lane of said highway. It had the right-of-way. This was a two lane highway for east bound traffic. In the other east lane there was a car passing the truck. The automobile driven and operated by defendant was on an access road to IH 10 where it was her duty to yield the right-of-way to traffic on IH 10. She was on an easterly course and entered IH 10 without stopping, colliding with the rear portion of the trailer of said truck after the latter had crossed the intersection of said access road. The front portion of the truck was then upon the west approach to the Neches River bridge. After the impact, the defendant's automobile was near the railing on the south side of the highway and the motor truck driven by the plaintiff was brought to a stop approximately 150 feet to the east of the point of contact of the vehicles. Plaintiff alleged

that the defendant in the operation of her automobile at the time and on the occasion in question was guilty of acts of omission and commission, each being negligent and a direct and proximate cause of the collision and the resulting injuries and damages to plaintiff. Defendant answered by general denial, a plea of contributory negligence and a plea of unavoidable accident.

In answer to the special issues submitted to the jury, it found:

1. The defendant Shirley A. Kaufman at the time and immediately before the collision was not driving her automobile at a greater rate of speed than a person of ordinary prudence would have driven under the same or similar circumstances.

4. Shirley Kaufman as she approached the intersection of Pine Street with IH 10 failed to keep a proper lookout for the vehicle driven by plaintiff Louis S. Miller.

5. Such failure was a proximate cause of the injuries and damages suffered by the plaintiff Louis S. Miller.

6. Just prior to the collision Shirley Kaufman failed to stop her vehicle at the entrance to IH 10.

7. Such failure to stop was negligence.

8. Such failure to stop was the proximate cause of the injuries sustained by plaintiff Louis S. Miller.

9. At the time Shirley Kaufman's car was at the entrance to IH 10 the truck driven by Louis S. Miller was so close as to constitute an immediate hazard.

10. Shirley Kaufman failed to yield the right-of-way to the plaintiff Louis S. Miller.

10A. Such failure to yield the right-of-way was negligence.

10B. Such negligence was a proximate cause of the collision in question.

11. Louis S. Miller sustained injuries to his person as a direct and proximate result of the collision in question.

12. Louis S. Miller's injuries are not solely the result of prior injuries existing before July 15, 1961.

13. Louis S. Miller immediately before the collision in question did not fail · to keep a proper lookout.

15. Louis S. Miller immediately before the collision in question did fail to give an audible warning with his horn.

16. Such failure of Louis S. Miller to give an audible warning with his horn was not negligence.

18. Just before the collision in question Louis S. Miller did not turn the truck into the right lane at a time when such movement could not be made in safety.

21. Louis S. Miller failed to turn his truck to the left immediately before the collision in question.

22. Such failure to turn his truck was not negligence.

24. The finding was "we do not" to the following issue:

Do you find from a preponderance of the evidence that Louis S. Miller immediately before the collision in question failed to make such application of the brakes on his truck and trailer that would have been made by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances.

26. The accident in question was not the result of an unavoidable accident.

27. Shirley Kaufman at the time and occasion in question failed to apply her brakes as timely as a reasonably prudent person would do under the same or similar circumstances.

28. Such failure to apply her brakes was a proximate cause of the collision in question.

29. Louis Miller sustained compensation neurosis as a direct and proximate result of the collision in question.

30. The sum of money which would fairly and reasonably compensate Louis Miller for his injuries and damages was $25,000.00.

Special issues 2, 3, 14, 17, 19, 20, 23 and 25 having been conditionally submitted, were not answered.

■ The trial court refused to give defendant's requested special issues Nos. 6, 7 and 8 as follows:

"6. Do you find from a preponderance of the evidence that on the occasion in question Plaintiff, Louis Miller, was operating his truck and trailer while in a state of fatigue?

"You are instructed by the phrase 'state of fatigue' is meant to become weary, tired or exhausted from labor, toil or exertion of any kind.

"Answer 'we do' or 'we do not'."

"7. If you have answered Special Issue No. —— 'we do', and only in that event, then answer:

"Do you find from a preponderance of the evidence that Plaintiff's operation of his motor vehicle on the occasion in question while in a state of fatigue, if you have so found, was negligence?

"Answer 'we do' or 'we do not'."

"8. If you have answered Special Issue No. —— 'we do', and only in that event, then answer:

"Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the collision in question?

"Answer 'we do' or 'we do not'."

Defendant alleged contributory negligence in the following language:

"* * * On the occasion in question the plaintiff, Louis S. Miller, was guilty of acts, wrongs and omissions, all amounting to negligence which proximately caused and brought about said collision 'and the plaintiff's injuries and damages, if any.'"

The evidence is that plaintiff Miller left Lake Charles, Louisiana, at 4:00 a. m. en route to Texas City, Texas, with a tank of caustic soda. This load was discharged at destination. Then Miller had lunch in Texas City. The collision occurred about 2:30 p. m. Prior to the collision he had stopped for refreshment. He had been driving continuously some three hours before the collision occurred. One of defendant's witnesses testified that the plaintiff did not appear to be dazed after the collision. There was no evidence, direct or circumstantial, to indicate that the plaintiff was operating his truck while in a state of fatigue or exhaustion.

 It was not error for the trial court to refuse to submit such issues for the additional reason that such issues were not ultimate issues. The fact that a person might drive his automobile while in a state of fatigue could not constitute negligence per se. Also, driving an automobile while in a state of fatigue could not in itself be a proximate cause of a collision unless the fatigue resulted in some act of omission or commission which proximately caused the collision. Defendant's points of error contending that her requested special issues 6, 7 and 8 should have been submitted to the jury are each and all overruled.

After this accident, plaintiff straightened out his truck and stopped. He knew there was a collision from looking in his rear view mirror. He was able to keep the truck under control and stop. He was a little bruised up. The truck he was driving was a tank truck and trailer, weighing some 13,000 pounds. He was hauling chemicals. This was the load he ordinarily carried except when he carried flammable gasoline.

The testimony reflects that plaintiff began suffering with spells of dizziness, blackout spells and nervousness shortly after the collision in question. Such spells he had never had before this accident. He had been driving such trucks for years. Two months after this collision, plaintiff's condition was such that he could no longer drive trucks and he submitted himself for treatment to various doctors. Dr. Lathrop, a psychiatrist at New Orleans, Louisiana, testified that the plaintiff developed these symptoms as a result of the collision in question; that he suffered a conversion reaction which developed into a neurosis. This, in his opinion, resulted from the collision of July 15, 1961. Dr. Lathrop described the personality of plaintiff as that of a nice, quiet, kind, gentle person who would never "hurt a fly"; that for such a person to hurt any living thing is a frightening experience. In his opinion plaintiff was suffering from "compensation neurosis" directly connected with and as a result of the accident of July 15, 1961; that it was not to be confused with malingering, where an individual deliberately tries to imitate an illness for the purpose of gaining compensation; that compensation neurosis is not an intentional or deliberate thing on the part of a person; that the person is suffering from a mental condition that is being transferred into physical aches or illnesses as real to that person as though the injury had been initially to other portions of the person than the mind itself. Dr. Lathrop testified there was a causal relationship between the accident and plaintiff's incapacity to drive; that before the accident he was able to drive and after the accident he became unable to drive. His exact language is: "This is a fact as far as I am concerned."

The testimony of Dr. Lathrop was consistent and corroborative with the testimony of plaintiff and that of plaintiff's wife that

the spells of dizziness, black-out spells and the nervousness did not exist prior to the accident in question but began shortly following the accident, ultimately and conclusively disqualifying and incapacitating plaintiff from driving trucks upon the public highway.

Defendant contends that the plaintiff, Louis S. Miller, did not sustain that character of personal injury which is compensable under the laws of the State of Texas regulating common law actions for damages based upon negligence. In Houston Electric Co. v. Dorsett, 145 Tex. 95, 194 S.W.2d 546 (1946) the petitioner in that case contended that respondent had not alleged a cause of action, principally for the following reasons:

"(1) Petitioner's bus did not come in contact with respondent, and she seeks to recover damages for fright, and under the law petitioner is not liable for damages caused by fright; (2) the damages claimed were too remote and speculative to permit a recovery thereon; (3) the alleged simple negligence of the bus driver could not have been a proximate cause of any damage; (4) the damage claimed by respondent was not, as a matter of law, foreseeable; and (5) no facts were alleged showing respondent sustained any physical injury, and her claim for damages rests solely upon the ground of fright and shock. The trial court sustained the exceptions urged by petitioner."

In that decision the Supreme Court of Texas held that a recovery may be had where a physical injury results from fright or other mental shock, caused by wrongful act or omission of another, provided the act or omission is the proximate cause of injury and the injury ought, in light of all the circumstances, to have been foreseen as a natural and probable consequence thereof. It followed the doctrine announced in previous Supreme Court decisions of this State in the following language:

"In 1900 this Court, in the case of Gulf, C. & S. F. Railway Co. v. Hayter, 93 Tex. 239, 54 S.W. 944, 945, 47 L.R.A. 325, 77 Am.St.Rep. 856, reviewed the decisions in conflict upon this question, and reaffirmed the doctrine announced in Hill v. Kimball [76 Tex. 210, 13 S.W. 59, 7 L.R.A. 618], supra, and in that case Chief Justice Gaines said:

"'We conclude that, where a physical injury results from a fright or other mental shock, caused by the wrongful act or omission of another, the injured party is entitled to recover his damages, provided the act or omission is the proximate cause of the injury, and the injury ought, in the light of all the circumstances, to have been foreseen as a natural and probable consequence thereof. In our opinion, as a general rule, these questions should be left to the determination of the jury.'"

Defendant's contentions in this case are similar to the petitioner's in Houston Electric Co. v. Dorsett, supra. The jury findings in this case are against defendant's contentions. Defendant argues at length from the North Carolina case of Williamson v. Bennett, 251 N.C. 498, 112 S.E.2d 48. The decisions cited in Houston Electric Co. v. Dorsett, supra, are controlling here.

In Bailey v. American General Ins. Co., 154 Tex. 430, 279 S.W.2d 315 (1955) the principles announced in the previous opinions of Gulf, C. & S. F. Railway Co. v. Hayter, 93 Tex. 239, 54 S.W. 944; Houston Electric Co. v. Dorsett, supra, were approved and language in Gulf C. & S. F. Railway Co. v. Hayter quoted below approved:

"On appeal, this Court affirmed the lower courts, saying [93 Tex. 239, 54 S.W. 945]: 'But, in the light of modern science,—nay, in the light of common knowledge,—can a court say, as a matter of law, that a strong mental emotion may not produce in the subject bodily or mental injury?' * * * We conclude

that, where a physical injury results from a fright or other mental shock, caused by the wrongful act or omission of another, the injured party is entitled to recover his damages. * * * "

■ The character of personal injury sustained by plaintiff is compensable under the laws of Texas regulating common law actions for damages based upon negligence.

■ Defendant contends the finding of the jury fixing damages to plaintiff in the amount of $25,000.00 is excessive. On July 15, 1961 plaintiff was 31 years of age. His employer was paying him $150.00 a week. He continued to drive his truck from July 15, 1961 to May, 1962. He did not work for about a year. Then he obtained employment for a dairy farm at $40.00 a week. He worked for a service station in November of 1963 at the rate of $50.00 a week for a 12–15 hour day. At the time of trial he was working as a helper for a milk truck driver at $300.00 a month. The evidence shows diminution of his earning capacity. He had been instructed by several doctors not to drive a truck any longer. He had to accept jobs which paid less money. There is nothing in the jury's verdict finding $25,000.00 damages to indicate prejudice on the part of the jury or that it was grossly excessive. The amount does not shock the conscience. This point of error is overruled.

■ In considering the "no evidence" contentions on the part of defendant that the various findings of the jury are not supported by any evidence, that part of the record most favorable to plaintiff is controlling and defendant's contentions are overruled.

■ In considering defendant's points of error contending that certain jury findings are contrary to the great weight and preponderance of the evidence, the entire record and all evidence is reviewed and each and all of such points of error are overruled.

■ Defendant contends there was misconduct of the jury prejudicial to the rights of defendant as the jury received dictionary definitions of words used in the special issues and the court's charge. Defendant further contends that during their deliberations, the foreman read them to the jurors, and such definitions were fully discussed and used by them in answering such special issues—all in violation of the instructions and admonitions of the court. The only dictionary definition quoted upon the motion for new trial was of the word "proximate". The definition was "near" or "immediately following" or "immediately preceding". The term "proximate cause" was a matter of concern to the jury. There is nothing in the definition of the word "proximate" read to the jury shown to have been prejudicial to the defendant. There was no probative evidence that any definition of "proximate cause" was produced before the jury after it retired to consider its verdict other than that contained in the charge of the court. The words "neurosis" and "negligence" were also looked up in dictionaries but the evidence upon the motion for new trial reflects that no juror remembered the definitions in the dictionary of such words. Jury misconduct was established, as jurors are not permitted to use dictionaries in order to secure definitions for words used in the court's charge. However, under Texas Rules of Civil Procedure, rule 327 defendant had the burden of establishing to the satisfaction of the court that it "reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to him." St. Louis Southwestern Railway Co. v. Gregory, 387 S.W.2d 27 (S.Ct.1965). Defendant has not attempted to demonstrate any such injury, and we do not conclude as a matter of law that such injury resulted. Davis v. Damge, Tex. Civ.App., 328 S.W.2d 203.

■ Defendant further contends that there was jury misconduct in that un-

identified jurors stated to the juror, Jostes, that affirmative answers to special issues 16 and 24 were immaterial as plaintiff would be awarded damages regardless of how such issues were answered. Special issues 16 and 24 were contributory negligence issues in reference to the failure of plaintiff to sound his horn and apply his brakes. The jury found no negligence in such failures. The jurors, Barnes and Jostes, testified that some such statement was made. They believed some such discussion was had. The juror, Naugle, denied that any such statement was made. The juror, Wright, denied hearing any such statement or discussion. After hearing on defendant's motion for new trial, the trial court overruled it. No findings of fact thereon were made by the trial court. The testimony is not clear. The evidence does not conclusively show that the misconduct occurred. This court must presume from the order overruling the motion for new trial that the trial court found that such jury misconduct did not occur. Milstead v. Aynesworth, 341 S.W.2d 942 (Tex.Civ. App.1961), ref. n. r. e.

Under the jury findings the defendant failed to keep a proper lookout, failed to stop her vehicle at the entrance of IH 10 and failed to yield the right-of-way to the plaintiff. Further, the jury found that at the time defendant's car was at the entrance of IH 10, the truck driven by plaintiff was so close as to constitute an immediate hazard. Findings in connection with such issues were made of proximate cause and negligence.

■ Defendant admitted that when she first saw the cab of the tractor it was in front of her in the south lane of the highway, the lane nearest to the access road she was about to leave. It is un-disputed that she struck the back tandem tire of the trailer some 30 feet to the rear of the cab. She admitted she was travelling 20 to 30 miles per hour. Plaintiff saw defendant's automobile as it was approaching the highway on the access road, observing nothing to indicate that defendant was not going to stop or yield before entering the highway. Plaintiff, as a matter of law under these circumstances, was under no duty to sound his horn or apply his brakes. The only pleading of defendant was a general pleading of contributory negligence and there is no pleading of discovered peril on the part of defendant. Certainly, under the facts, discovered peril is not in this case. No issues were requested on such theory. Plaintiff was not required under the law to assume that defendant would violate the law by entering the highway and running into the rear of his vehicle. So, he had no duty to sound his horn or put on his brakes. § 73(a) and (b) and § 133(a), Art. 6701d, Vernon's Ann.Rev.Civ.St.Tex. As a matter of law under the circumstances there was no evidence to support a jury finding of negligence in either special issue 16 or 24. Minugh v. Royal Crown Bottling Co., Tex. Civ.App., 267 S.W.2d 861, 864, error refused; Muse v. McWilliams, 295 S.W.2d 680, (Tex.Civ.App.1956) reversed on other grounds, 157 Tex. 109, 300 S.W.2d 643, and cases cited therein on page 686. Had there been affirmative answers to such issues, they would have been properly disregarded by the court and judgment entered in defendant's favor accordingly. The points of error relating to jury misconduct are overruled under authority of T.R.C.P. rules 327 and 434, and St. Louis Southwestern Railway Co. v. Gregory, 387 S.W.2d 27 (S.Ct.1965).

The judgment of the trial court is affirmed.