**Leonard L. DOWNING, Appellant,**

v.

**UNIROYAL, INC., et al., Appellees.**

No. 17383.

Court of Civil Appeals of Texas,
Dallas.

Feb. 13, 1970.

Rehearing Denied March 6, 1970.

Homer A. Brown, Brown, Brown & Bowen, Garland, for appellant.

B. Thomas McElroy, White, McElroy & White, Dallas, for appellees.

DIXON, Chief Justice.

Appellant Leonard L. Downing sued appellees Uniroyal, Inc. and Charles E. Davis for damages for personal injuries and for property damage resulting from a collision of motor vehicles. Downing, driving a pickup truck, had stopped at a street intersection facing a red traffic signal. Davis, an employee of Uniroyal, Inc., while in the course of his employment drove a Plymouth sedan into the rear of Downing's pickup truck. The collision occurred on April 10, 1967.

A jury found negligence and proximate cause issues against appellees. Property damage was found by the jury in the amount of $161.98. But as to the personal injury damage issue the only award was for past medical, hospital and doctors' bills in the amount of $12.00. With reference to all other elements of the personal injury damage issue the jury made findings to the effect that appellant had sustained no damage whatever.[1]

Pursuant to the jury verdict judgment was rendered in favor of appellant Downing for $173.98, being the sum of the past medical, hospital and doctors' bills of $12.00 and automobile damage of $161.98.

Downing has appealed, contending that the damages awarded by the jury are manifestly too small and were not equitable to him as plaintiff. He cites Rule 328, Vernon's Texas Rules of Civil Procedure.

Appellees on the other hand contend that there is no finding by the jury that appellant was injured in the collision of April 10, 1967; and that in fact appellant was not injured at all in that collision. It is appellees' position that all of appellant's alleged injuries were the result of a prior accident in 1964.

In view of the nature of the opposing contentions it becomes necessary for us to make a careful analysis of the evidence and the jury findings bearing on the question of the injuries claimed by appellant.

## EVIDENCE

### Testimony of Appellant Downing

For some years Downing has owned and operated a business known as A–1 Roofing Company.

With reference to the collision of April 10, 1967 Downing testified that the force of the collision knocked his truck forward four or five feet and caused shingles to fall off the truck from both sides and from the rear. The frame on the vehicle was bent. He himself was tossed around in the truck against the door and the steering wheel. As a result his back, neck and shoulders were injured and he suffered pain. The hurting became worse after he got home about an hour after the accident. Harvey Langley, an employee, met him and he told Langley he was in great pain.

1. Since this controversy is concerned mainly with the personal injury issue and the jury's answers thereto, we herewith copy said issue and the jury's answers in their entirety:

"SPECIAL ISSUE NO. 9

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will fairly and reasonably compensate plaintiff Leonard L. Downing *for injuries, if any, resulting directly and proximately from the collision in question?*

In answering this issue you may take into account the following elements of damage, if any, and none other.

a. Diminished capacity to labor and earn money, if any, in the past from the date of this collision to the time of this trial.

Answer in dollars and cents, if any.

ANSWER: No dollars and No cents.

b. Diminished capacity to labor and earn money in the future, if you find in reasonable probability it will be diminished in the future.

Answer in dollars and cents, if any.

ANSWER: No Dollars and No Cents.

c. Physical pain, if any, and suffering, if any, from the date of this collision to the date of this trial.

Answer in dollars and cents, if any.

ANSWER: No Dollars and No Cents.

d. Physical pain, if any, and suffering, if any, in the future, if you find in reasonable probability there will be any in the future from the time of this trial.

Answer in dollars and cents, if any.

ANSWER: No Dollars and No Cents.

e. *Reasonable and necessary medical, hospital and doctor bills, if any, in the past* from the date of this collision to the time of this trial.

Answer in dollars and cents, if any.

*ANSWER: 12 Dollars and No Cents.*

f. Reasonable and necessary medical expense, if any, and doctor bills, if any, in the future, if you find in reasonable probability there will be any in the future from the time of this trial.

Answer in dollars and cents, if any.

ANSWER: No Dollar and No Cents."

(Emphasis ours.)

Langley chose a doctor's name from the list of physicians in the yellow pages of the telephone directory. Langley then drove Downing in Downing's car to see the doctor. The doctor examined him and gave him two prescriptions—one for pain, the other for a salve to rub on his neck. During the examination Downing says that he noticed that the Doctor smelled of liquor on his breath and didn't talk or walk right. The doctor told him to come back next day and x-rays would be made.

Instead of returning to the above doctor Downing went to see Dr. W. H. La Prade, who gave him medicine to ease his pain. He went to Baylor Hospital where he was seen by Dr. Caldwell as an outpatient and given therapy treatment for his back, neck and shoulders. These treatments continued for five days a week for five or six weeks, then were reduced to three treatments each week.

Downing testified that he was seriously injured in 1964 when he fell off a roof. His back and vertebrae were injured. He was in the hospital for some time and was unable to return to work for some weeks. However he had a good recovery and had returned to full time work as a roofer. He climbed ladders carrying bundles of shingles weighing 60 or 70 pounds to the roofs of two-story houses and he pulled up old singles and laid squares of new shingles.

Since the collision of April 10, 1967 he has not been able to work as a roofer. He can no longer lift ordinary wooden ladders, but can lift only light aluminum ladders. He has to be assisted up ladders so he can get to the roofs of houses to make estimates on the prices to charge for roofing jobs. The pain in his neck, shoulders and back persists.

The expenses of his treatment at Baylor Hospital were $452. Dr. La Prade sent him a bill for $50. The first doctor sent him a bill for $10. His expenses for drugs amounted to $87.48.

### Testimony of Appellee Davis

Immediately after the collision Davis went to Downing's truck. Downing remained sitting in his truck for about two minutes; said he didn't know whether he was injured but before he got out of the truck and afterward he complained that "he was hurting." Davis saw no cuts, bruises or abrasions or other visible signs of injuries.

### Testimony of Police Officer Walter Wilson

Wilson arrived at scene of collision a few minutes after the collision. He saw shingles scattered over the street. Davis said he was traveling 20 miles per hour just before the collision. Downing complained that he was hurt, his back was bothering him. But Wilson did not mention this in his official accident report as he did not consider it a major collision. A major collision is one in which somebody is injured seriously enough to be taken to the hospital.

### Testimony of Harvey Langley

He is an employee of Downing's. He met Downing on arrival at home; had to assist Downing out of truck and into house. Downing complained of pain. Langley selected a doctor's name from yellow pages and took Downing to the Doctor's office.

Downing did full work as a roofer alongside Langley before collision of 1967, carrying heavy bundles of shingles up to roofs, etc. But since the collision Downing has not been able to do roofing work. He can hardly get up the ladder to the roof to make estimates.

### Testimony of Gene Mendell and Ed Smith, Jr.

They also are employees of Downing. Their testimony was about the same as that of Langley. Prior to collision of April 10, 1967, Downing himself did heavy roofing work the same as his employees, but since

the collision he has not been able to do roofing work and complains of pain.

### Testimony of Shirley Frost

She is a stepdaughter of Downing. He seemed in good health and did heavy work prior to the collision of April 10, 1967. Since then he has not been able to do any roofing work or any lifting of anything of any considerable weight; and complains of pain.

### Testimony of Dr. W. H. La Prade

Treated Downing first on April 13, 1967. Downing gave a history of injury in the collision of April 10, 1967; also gave a history of injury in a fall from a roof in 1964. Dr. La Prade found marked spasms of the cervical muscles of back. Muscle spasms are objective symptoms. He saw Downing many times and never failed to find muscle spasms. Pain is ordinarily a subjective symptom, but if a person has muscle spasms he has to have pain. Dr. La Prade referred Downing to Baylor Hospital for treatments. X-rays showed old injuries to Downing's back, but no damage to bone structure from more recent injury. Dr. La Prade thought that Downing had a full recovery from the earlier injury but that the recent injury had aggravated the compression fracture of the spine suffered in the first accident—so that the first injury "has contributed to the present permanent disability as to the lumbar spine."

### Testimony of E. C. Mahon and Tom S. McCorkel

They had contracted with Downing to repair the roofs of their houses, Mahon in the summer of 1965 and McCorkel in December of 1966. Both dates were prior to the collision of April 10, 1967. Both Mahon and McCorkel saw Downing climbing up and down ladders and doing heavy work in repairing the roofs of their houses. Neither of them knew anything about the accident of April 10, 1967.

### Testimony of Dr. Wiley Hodges

Examined Downing day before trial, did not treat him. Noticed that Downing had increased bulk of spinous muscle on each side of spine; same as muscle spasm. X-rays showed the old injury to spine and pelvis. It is possible that an injured person could have continuing pain and trouble from those injuries over a period of time and years.

### Evidence offered by Appellees

Appellees did not present any witnesses. All the witnesses were offered by appellant. Appellees did put in evidence hospital records showing that Downing suffered serious injuries when he fell from a roof in 1964. They also put in evidence Downing's income tax returns showing that his roofing business showed more profit in 1967 and 1968 than in previous years. Downing testified that his business is growing and he would have made even more profit in 1967 and 1968 but for his injuries suffered in the collision of April 10, 1967.

### OPINION

■ We do not agree with appellees when they say that there was no finding by the jury that Downing was injured in the collision of April 10, 1967. Quite the contrary, the jury did find that Downing sustained injury in the collision.

We refer again to the jury's finding in Special Issue No. 9, the damage issue:

"What sum of money, if any, do you find * * * will fairly and reasonably compensate plaintiff Leonard L. Downing *for injuries,* if any, *resulting directly and proximately from the collision in question?* * * *

* * * e. Reasonable and necessary medical, hospital and doctor's bills, if any, in the past. * * *

Answer in dollars and cents if any.

ANSWER: 12 dollars and no cents." (Emphasis ours.)

NO objections were made to the form of Special Issue No. 9. We think that the effect of the jury's answer is that Downing incurred medical, hospital and doctors' bills proximately resulting from *injuries* sustained in the collision of April 10, 1967.

We also think that the evidence is overwhelming that Downing did suffer pain from the injuries then sustained. It is true that his own testimony is that of an interested party. It is true, too, that pain is a subjective symptom. But muscle spasm is made evident by objective, visible symptoms. Both Dr. La Prade and Dr. Hodges found muscle spasms in Downing's back. And Dr. La Prade indicated that muscle spasms are accompanied by pain.

Yet the jury in item c. of Special Issue No. 9 refused to allow any recovery whatever for past pain and suffering. Furthermore the answer of $12 for past medical, hospital and doctors' bills was made in the face of undisputed testimony that Downing has incurred about $600 as such expenses.

Rule 328, T.R.C.P., provides that new trials may be granted when the damages are *manifestly too small.* We believe the rule is applicable here. Gallegos v. Clegg, 417 S. W.2d 347, 357 (Tex.Civ.App., Corpus Christi 1967, writ ref'd N.R.E.); Qualls v. Miller, 414 S.W.2d 746 (Tex.Civ.App., Texarkana, 1967, no writ); Bolen v. Timmons, 407 S.W.2d 947, 949 (Tex.Civ.App., Amarillo 1966, no writ); Edmondson v. Keller, 401 S.W.2d 718, 720 (Tex.Civ.App., Austin 1966, no writ); Collins v. Stanford, 340 S. W.2d 855, 858 (Tex.Civ.App., Texarkana 1960, no writ); Lowery v. Berry, 153 Tex. 411, 269 S.W.2d 795 (1954). We sustain appellant's first point of error.

In his second point of error appellant asserts that counsel for appellees injected unsworn hearsay testimony into the record in the presence of the jury, which unsworn testimony was so prejudicial to appellant as to render the error incurable even with a court instruction to the jury to disregard the said unsworn hearsay testimony.

Appellant's point refers to a part of the cross-examination of appellant by appellees' counsel as follows:

"Q Now, with respect to this doctor that you first went to see, Dr. B * * * you have told this jury and a court of law that that man smelled of liquor on his breath and didn't talk or walk right.

A. Yes, sir, I have.

Q And actually, do you know that that man had a stroke, that this is what his office says is the reason for whatever his manner may appear to be on occasion?"

Counsel for appellant objected to the above statement by appellees' counsel. The court sustained the objection. Then, after the objection had been sustained, counsel for appellees made this additional statement in the presence of the jury, *"That's what they tell me, Your Honor."* (Emphasis ours.) Appellant's counsel again objected and asked the court to instruct the jury to disregard the statement. The court so instructed the jury. But appellant's counsel did not move for a mistrial.

The Doctor in question was not called as a witness by either side.

The statements of appellees' counsel were improper, indeed. He had not been sworn as a witness. Moreover the impropriety was compounded when after objection had been sustained, counsel for appellees made the hearsay statement, "That's what they tell me, Your Honor."

Appellant claims that the remarks of appellees' counsel were not only reversible error in themselves, but that they contributed to the result complained about in appellant's first point—inadequate damages.

Nevertheless we must hold that appellant's second point does not present reversible error under the circumstances. Because of his failure to move for a mistrial appellant cannot now be heard to complain. It has been held that parties who do not move for a mistrial based on misconduct

of opposing counsel in the questioning of a witness indicate their willingness to speculate on a favorable verdict of the jury. Consequently they have waived their right to complain when the jury verdict later turns out to be unfavorable. Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558 (1949); Dimmitt v. Dimmitt, 263 S.W.2d 648, 660 (Tex.Civ.App., Austin, 1953, writ dism'd). See also Colls v. Price's Creameries, 244 S.W.2d 900 (Tex.Civ.App., El Paso 1951, writ ref'd n. r. e.); City of Denton v. Chastain, 156 S.W.2d 554 (Tex. Civ.App., Fort Worth 1941, no writ). Appellant's second point of error is overruled.

 In his third point of error appellant contends that there was jury misconduct which in all probability resulted in a verdict based on prejudice and matters which were improperly considered.

Attached to appellant's motion for new trial is an affidavit by one of the jurors describing several words and acts by the jurors which are alleged to constitute misconduct. Among the alleged words and acts according to the affiant was a statement by one of the jurors that the cost of appellant's treatment at Baylor Hospital would be paid by an insurance company and would not cost appellant anything. Therefore appellant should not be allowed any recovery for said expenses. Also the affiant stated that the jurors agreed not to allow any damages for pain because they did not know how to calculate it in dollars and cents—not because they felt appellant had not suffered pain.

The above and other alleged acts of jury misconduct are offered by appellant not only as reversible error in themselves, but also as contributing to the result complained of in appellant's first point—inadequate damages.

Under the circumstances we cannot sustain appellant's third point. At the hearing on appellant's motion for new trial no evidence or testimony from any of the jurors was offered to substantiate the allegations in the affidavit.

The affidavit itself is not evidence, nor admissible as such at a hearing on a motion for new trial. Rule 327, T.R.C.P.; Innes v. Greiner, 449 S.W.2d 83 (Tex.Civ. App., Amarillo, December 29, 1969); Kaufman v. Miller, 405 S.W.2d 820 (Tex.Civ. App., Beaumont 1966, reversed on other grounds Tex., 414 S.W.2d 164); City of San Antonio v. Anderson, 343 S.W.2d 950 (Tex.Civ.App., Eastland 1961, no writ); Milstead v. Aynesworth, 341 S.W.2d 942 (Tex.Civ.App., Texarkana 1960, writ. ref'd n. r. e.); Tex. Livestock Marketing Ass'n v. Rogers, 244 S.W.2d 859 (Tex.Civ.App., San Antonio 1951, writ ref'd n. r. e.). Appellant's third point is overruled.

Having sustained appellant's first point of error we reverse the trial court's judgment and remand the cause for another trial.

Reversed and remanded.