**Walter TAYLOR, Appellant,**

**v.**

**Maurice DUNN et al., Appellees.**

**No. 4878.**

Court of Civil Appeals of Texas, Waco.

April 16, 1970.

Rehearing Denied May 14, 1970.

Roy Rutland, Waco, for appellant.

Haley, Fulbright, Winniford, Sessions & Bice, John Fulbright, Waco, for appellees.

OPINION

HALL, Justice.

In this automobile collision case, the plaintiff appeals from a judgment on a verdict which awarded him damages for loss of earnings and medical expenses in the past, and property damage, but which allowed him nothing for physical pain and mental anguish. Plaintiff contends that there is no evidence to support the jury's answer of "none" to the question of compensation due him for pain and suffering from the time of collision to the trial; or alternatively, that the answer is against the great weight and preponderance of the evidence, and that the award

is inadequate. We sustain these contentions, reverse the judgment, and remand the case for a new trial.

The evidence shows that while plaintiff's automobile was stopped in a line of traffic in response to a red light, a car being driven by the defendant Maurice Dunn collided into the rear of it. The impact caused plaintiff's vehicle to crash into another car which was stopped ten to fifteen feet in front of it. Maurice testified that he did not see plaintiff's vehicle until he was within ten to fifteen feet of it, and that "I hit my brake with all I had, * * * but too late." At that time, Maurice's speed was about 30 miles per hour. An off-duty policeman, who was traveling immediately behind Maurice, testified that Maurice's vehicle "just shot right into (plaintiff's) car." The jury found that plaintiff's vehicle was worth $650 immediately before the collision and $150 immediately after.

On the trial, defendants did not contend that any act of plaintiff caused the collision. The jury found that it was caused by Maurice's negligence, and failed to find that it was unavoidable.

Plaintiff was 57 years of age. He was driving a Valiant automobile, "a small car." The car that struck his and the one he was pushed into were regular size. He testified that he received no form of warning before he was struck; that "it hit me from behind and I went back, and that catch on the seat, there was so much force it came loose and I went back, and about that time I hit this other car and then it knocked me to the front; and after that—I don't know very much after that." He said that he struck the steering wheel, resulting in pain in his chest; that after the accident "my neck pained me some, and I went over to my daughter's house. Well, my neck pained me more and they carried me to the hospital." He stated that he never before had pain like this in his neck.

The collision occurred at 11:00 P.M. on October 5, 1968. Plaintiff was taken to the hospital within two hours thereafter. He was treated in the emergency room of the hospital, then referred to Dr. Wagnon, a bone and joint specialist. Dr. Wagnon found "there is soreness of the chest * * and some tightness of the neck and stiffness, apparently as a result of the accident. * * *" The hospital records show that plaintiff received immediate treatment with muscle relaxants and sedatives to relieve pain and allow him to rest; and that tranquilizers and sedatives were regularly administered to him during his three-day stay in the hospital.

Plaintiff stated that when he left the hospital he went home "and got in bed and stayed in bed." He said that at the hospital, "I had pain but they give you tablets so often, I guess that was for pain, but I had more pain probably at home than I did there because they didn't give me as many tablets at home as they did out there." After leaving the hospital, he went to see Dr. Spark, who then referred him to Dr. Ross. Plaintiff did not return to work until November 12th. He said that he did not feel good even then, and had occasional severe pains that required him to rest, which his employer permitted; and that he was assigned new tasks on the job that required very little physical exertion.

Plaintiff went to see Dr. Stockton on March 18, 1969, which was after he had employed legal counsel. Dr. Stockton said that plaintiff was complaining of neck pain when he first saw him; that he performed a neurological examination which revealed muscle spasm in the neck and limitation in the range of motion of the neck; that these findings were objective symptoms, rather than subjective, and "could not be faked" under the conditions of the test given; that he placed plaintiff on muscle relaxant and pain medication, and traction. He testified that occasionally a person will have enough arthritis

in the joints of the cervical spine that it will give him pain; that it is possible for this condition to be severe enough to cause compression of the nerve roots. He said: "One of the other things that quite frequently occurs with this type of circumstance is that a patient will have arthritis, will be completely asymptomatic with this until they have an automobile accident and then they will have a great deal of pain in association with this and will have some muscle spasm that will occur. We really think that this is what probably happened in Mr. Taylor's case."

Dr. Stockton expressed the opinion that plaintiff's condition was caused by the collision; and that in view of the protracted nature of plaintiff's symptoms, considered with the objective findings, it is reasonably probable that there is some permanent disability in the plaintiff's neck.

The defendants argue that the following is legally sufficient evidence "from which the jury might reasonably have concluded that (plaintiff's) injuries were of relatively minor nature, not causing any substantial pain or suffering": (1) the officer who investigated the collision does not recall plaintiff complaining of injury; (2) plaintiff was taken to the hospital by private transportation, and, according to hospital records, was asleep within two and one-half hours after admission; (3) although the hospital records contain numerous entries made by the attending nurses, no entry was made of any complaint by plaintiff of pain during his hospital confinement; (4) a complete absence of any evidence after he left the hospital that plaintiff bought any medication for pain resulting from the accident; (5) the failure of plaintiff to call doctors Wagnon, Spark and Ross to testify in his behalf,

thus providing the only medical testimony from Dr. Stockton who did not see plaintiff until five months after the collision and after employment of legal counsel; (6) testimony of plaintiff's medical witness (Dr. Stockton) that the usual history of neck injuries in connection with automobile accidents is that the most severe pain is during a week or so following the accident with normal improvement "as time passes with Mother Nature working on them," considered with the lack of entries in the hospital records of complaint of pain by plaintiff; and (7) testimony by Dr. Stockton to the effect that 80% to 85% of his patients with injuries similar to plaintiff's complaint never return following settlement of their claim.

Although the circumstances relied upon by defendants to support the questioned finding might militate against any substantial grant of damages to plaintiff for past pain and suffering and might well support a minimal award in that regard; nevertheless, we do not believe they constitute evidence that plaintiff did not sustain injury and did not suffer pain as a result of the collision. To the contrary, we think the only probative evidence in the record on the question is that plaintiff did suffer some physical pain as a result of the collision. If he did, then he is entitled to compensation for it and the jury's answer of "none" is without support in the evidence. Lowery v. Berry, 153 Tex. 411, 269 S.W.2d 795, 797 (1954).

In any event, our review of the entire record convinces us that the jury's answer is against the great weight and preponderance of the evidence, requiring a new trial.[1] Carrico v. Busby (Tex.Civ. App., 1959, writ ref., n. r. e.), 325 S.W.2d 413; Bolen v. Timmons (Tex.Civ.App.,

---

1. We note that the jury allowed plaintiff $300.00 for loss of earnings and $385.90 for past medical expenses. The allowance for medical expenses was for the total amount sought by plaintiff, and included the fees of doctors Wagnon, Spark, Ross and Stockton, and the hospital account. To reach these awards, under the court's instructions, the jury was required to find that plaintiff "sustained an injury suffered in the collision" and that the damages allowed were "the direct and proximate result of the injuries," and that the medical expenses were "reasonable and necessary."

1966, no writ hist.), 407 S.W.2d 947; Gallegos v. Clegg (Tex.Civ.App., 1967, writ ref., n. r. e.), 417 S.W.2d 347.[2]

It is apparent from what we have said, and we hold, that the damages allowed are inadequate. Plaintiff is entitled to a new trial on that ground. Rule 328, Texas Rules of Civil Procedure.

It is not necessary for us to pass on plaintiff's remaining points of error.

Reversed and remanded.

2. In deference to defendants' request, we have reviewed the record in the case of Reinke v. Thomas (Tex.Civ.App., 1963, writ ref., n. r. e.), 369 S.W.2d 692, decided by this court, which affirmed a judgment on a verdict allowing a plaintiff damages for loss of earnings and past medical expenses but denying anything for pain and suffering. That case and the one before us have little, if any, factual similarity. Moreover, in that case, much of the testimony of the plaintiff was directly refuted; and portions of his testimony on critical matters contained obvious exaggerations, discrepancies and contradictions. We have none of that, here.