**Ruth Arden ALLEN et vir., Appellants,**

**v.**

**James C. COMPTON et al., Appellees.**

**No. 17516.**

Court of Civil Appeals of Texas, Dallas.

Dec. 4, 1970.

Rehearing Denied Dec. 24, 1970.

Eric Eades, Jr., Eades & Eades, Dallas, for appellants.

Royal H. Brin, Jr., Strasburger, Price, Kelton, Martin & Unis, John L. Lancaster, III, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellees.

DIXON, Chief Justice.

This is a rear end collision case involving three automobiles. The automobile of appellant Ruth Arden Allen was in front, the car of appellee Evelyn Rogers was in the middle and the car of appellee James C. Compton was in the rear.

Appellant Ruth Arden Allen had brought her car to a stop in a line of automobiles facing a red traffic light. Appellee Compton's car collided with the rear of the middle car, that of Evelyn Rogers, and said middle car was knocked into the rear of the car of appellant Ruth Arden Allen. Appellant Ruth Arden Allen joined by her husband John Ray Allen sued both appellees for damages.

The trial court sustained a motion for instructed verdict in favor of Evelyn Rogers, operator of the middle car.

Twenty-six special issues were submitted to a jury. Among the jury's answers, material to this appeal, were the following: (1) appellee Compton failed to keep a proper lookout, (2) which was a proximate cause of the collision; (23) appellant (Mrs. Allen) sustained personal injuries as a proximate result of the negligence of appellee Compton, (24) but as to what sum of money would fairly and reasonably compensate Mrs. Allen for her injuries (including physical pain and suffering, men-

tal anguish, loss of earnings) the jury answered "NONE"; (25) as reasonable and necessary doctors' and medical bills, past and in the future, the jury answered $394; and (26) as reasonable and necessary cost of repairing Mrs. Allen's automobile the jury answered $50.72.

Appellants filed a motion asking the court to disregard the jury's answer to Special Issue No. 24 and to grant a new trial. This motion was overruled.

Appellee Compton filed a motion for judgment on the verdict. This motion was sustained and judgment was rendered in favor of appellants and against Compton for $444.72.

In six points of error appellants assert that the trial court erred (1) in overruling appellants' motion to disregard the jury's answer to Special Issue No. 24 because said answer was contrary to *all* the evidence and (2) in overruling appellants' motion for new trial since the jury's answer of "none" as to Special Issue No. 24 was against the great weight and preponderance of the evidence; (3) in refusing to grant a new trial since the damages awarded for property damage and medical expenses only are manifestly wrong and too small and were not equitable to appellants; (4) the damages awarded by the jury and the judgment based thereon are not supported by *any* evidence; (5) in excluding Mrs. Allen's testimony on redirect examination to the effect that she failed to visit the doctor for almost a year because she could not afford the expense of such additional visits, and that she did not visit the doctor on November 26, 1969 to talk about the litigation; and (6) in granting the motion for instructed verdict of appellee Rogers.

■ We agree with appellants that the jury's answer of "None" to Special Issue No. 24 is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong. This was the issue which inquired what sum of money if any would fairly and reasonably compensate Mrs. Allen for the injuries sustained by her proximately caused by the negligence of appellee Compton, to which the jury answered "None".

Mrs. Allen testified that following the accident she suffered from a painful stiffness in her neck, and pain and weakness in her arms and shoulders and from headaches. She testified that she had not had any such trouble before the collision. This painful condition continued in varying degrees of intensity from a day or two following the collision until the day of the trial. Sometimes the pain would subside, but later the condition would worsen. As a result she was unable to continue her employment at the Swiss Avenue Diagnostic Laboratories, or to continue her part time work as a swimming instructor and lifeguard for the Red Cross. Since the accident she has tried to hold several jobs, chiefly part time, including the selling of Avon and Mary Kay products. Consequently her income has decreased from nearly $6,000 per year to less than $2,500 in 1969. Mrs. Allen further testified that she is no longer able to perform most of her household duties, which have to be performed by her husband and two daughters.

Mrs. Allen testified that some years prior to the accident she had developed a mild bone-joint disease in her knees, but that it was not serious and never interfered with her work or her duties as a swimming instructor.

Mrs. Allen's husband John Ray Allen also testified and he corroborated his wife's testimony in all material particulars.

■ Of course Mrs. Allen and her husband are interested parties, so their testimony standing alone could raise no more than a fact issue. But their testimony finds considerable corroboration from the testimony of Dr. Russ B. Graham.

Dr. Graham treated Mrs. Allen on eight different occasions between July 16, 1968 and December 11, 1968. He caused several

sets of x-rays to be made. He diagnosed her injury as acute sprain and strain of the cervical spine. He testified that acute sprain and strain of the cervical spinewill cause pain. He also testified that he could feel the muscle spasm in Mrs. Allen's neck. He gave her two injections in her shoulders. He prescribed medication to ease the pain and caused Mrs. Allen to purchase and use a traction apparatus. He also sent her to Baylor Hospital for physical therapy treatments. At one time the doctor recommended hospitalization but Mrs. Allen said she could not afford to go. Her medical and doctor bills for out-patient and office visits amounted to $363.46.

Dr. Graham, following his treatment of Mrs. Allen on December 11, 1968 did not see her again until November 26, 1969, when she showed improvement. However his opinion was that it would be another six months before she would be fully recovered.

We think the jury's answer of "None" to Special Issue No. 24 is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong. A new trial should have been granted appellants. Rule 328, Vernon's Texas Rules of Civil Procedure; Downing v. Uniroyal, Inc., 451 S.W.2d 279, 283 (Tex.Civ.App., Dallas 1970, no writ); Gallegos v. Clegg, 417 S.W.2d 347 (Tex. Civ.App., Corpus Christi 1967, writ ref'd n. r. e); Taylor v. Head, 414 S.W.2d 542 (Tex.Civ.App., Texarkana 1967, writ ref'd n. r. e.); Bolen v. Timmons, 407 S.W.2d 947 (Tex.Civ.App., Amarillo 1966, no writ); Edmondson v. Keller, 401 S.W. 2d 718 (Tex.Civ.App., Austin 1966, no writ); Lowery v. Berry, 153 Tex. 411, 269 S.W.2d 795 (1954).

We are not prepared to say that the answer to Special Issue No. 24 was contrary to *all* the evidence, or that the damages awarded by the jury and the judgment based thereon are not supported by *any* evidence. Therefore appellants' first and fourth points of error are overruled.

However their second and third points are sustained.

In their fifth point appellants complain of the exclusion of testimony. It is undisputed that though Mrs. Allen went to Dr. Graham and was treated eight times between July 16, 1968 and December 11, 1968, she did not go to him for another treatment until November 26, 1969—approximately a year later. This fact was developed on direct examination of Dr. Graham, testifying from his notes.

Appellees in cross-examination of Dr. Graham and Mrs. Allen challenged the good intentions and purpose of Mrs. Allen and sought to impugn her good faith in connection with her failure for a year to return to Dr. Graham for teatments. They elicited testimony from Dr. Graham as follows:

"Q And on her last visit, Doctor, did you gather, or do you feel that her visit to you in 1969 in November was for the purpose of seeking medical treatment or advice or was it to bring your examinations up to date so to speak for testimony here?

A The latter.

Q In other words, she came to you so that you would have an up to date examination to testify about, right?

A That's my impression.

Q It had nothing to do with her a year after your last treatment suddenly needing medical treatment, is that correct?

A I did not feel that was the primary reason she came to see me."

\*   \*   \*   \*   \*   \*

"Q On December 11th, 1968, she came to your office and you got the first notation patient is improving, is that correct?

A Yes, sir.

Q All right, and then she didn't see you again until November 26th, 1969?

A Correct.

Q Didn't seek any further medical attention?

A Yes, sir.

Q From you?

A Yes, sir.

Q It was your feeling she was there at that time because of the lawsuit that was coming up rather than medical attention, primarily?

A That was my impression."

On redirect examination Mrs. Allen sought to explain her failure to see the doctor for about a year. She would have testified that she did not have the money to pay Dr. Graham, so she could not run up any higher medical expenses, though during that period she continued to have physical pain, and she did not go to see the doctor to talk about the litigation. This testimony was excluded.

Later in cross-examining Mrs. Allen appellee Compton's counsel again attacked her for her failure to go to Dr. Graham for about a year. We quote from the cross-examination:

"Q I asked you on page 36 of your deposition, line 8, 'do you have any appointments or plans to go back to either' —I previously asked you, 'the only two doctors you have been to is Dr. Caldwell and Dr. Graham, right' and your answer was, 'for this injury, yes.' 'Do you have any appointments or plans to go back to either one?' Do you remember that question?

A Yes, I do.

Q Do you remember what your answer was?

A Yes.

Q 'If I have trouble, I will go back to Dr. Graham, yes.' You didn't go back to him until you went back to talk about this lawsuit, did you?

A I didn't go back to talk about it."

Again on redirect examination Mrs. Allen sought to explain her failure to re-

turn for so long an interval. But on objection her proffered testimony was again

We are not here faced with the question whether the proffered testimony of Mrs. Allen would have been admissible if it had been offered on her primary direct examination. The question before us is this: was the testimony admissible on redirect examination to explain and rebut the testimony elicited by appellees on cross-examination?

■ We think that under the circumstances the testimony was admissible. Greenman v. City of Fort Worth, 308 S.W.2d 553, 556–557 (Tex.Civ.App., Fort Worth 1958, writ ref'd n. r. e.); Lumbermen's Lloyds v. Jones, 264 S.W.2d 759, 761 (Tex.Civ.App., Texarkana 1954, reversed on other grounds, 153 Tex. 379, 268 S.W.2d 909); Williamson v. Acosta, 257 S.W.2d 772 (Tex.Civ.App., El Paso 1953, no writ); Rudd v. Gulf Casualty Co., 257 S.W.2d 809, 811 (Tex.Civ.App., El Paso 1953, no writ); Booth v. Crosby, 248 S.W. 417, 419–420 (Tex.Civ.App., Austin 1923, writ dism'd); Porter et al v. Langley et al, 155 S.W. 1042, 1044 (Tex. Civ.App., Dallas 1913, writ ref'd); St. Louis & S. F. R. Co. v. Sizemore, 53 Tex.Civ.App. 491, 116 S.W. 403, 409 (1909, no writ); 23 Tex.Jur.2d 210.

■ Moreover, the general rule is that one may testify as to his intent and motive when motive and intent are put in issue. Davis v. Peck, etc., 94 S.W.2d 1245 (Tex.Civ.App., Amarillo 1936, writ dism'd); United States Fidelity & Guaranty Co. v. Henderson, 53 S.W.2d 811 (Tex.Civ.App., Amarillo 1932, no writ); Millerman v. Walton, 278 S.W. 483 (Tex. Civ.App., Austin 1925, no writ); Dittman v. Weiss, 31 S.W. 67 (Tex.Civ.App.1895, no writ); Robertson v. Gourley, 84 Tex. 575, 19 S.W. 1006 (1892); Hamburg v. Wood, 66 Tex. 168, 18 S.W. 623 (1886); 23 Tex.Jur.2d 713; McCormick & Ray, "Texas Law of Evidence", § 1428. Appellants' fifth point is sustained.

■ We come now to appellants' sixth point of error. Did the court properly in-

struct a verdict in favor of Mrs. Rogers, who was operating the middle car? We believe the questions of negligence and proximate cause in regard to Mrs. Rogers should have been submitted to the jury in regard to proper lookout.

It is true that Mrs. Rogers herself testified that she brought her car to a complete stop back of Mrs. Allen's car prior to the collision. Mrs. Allen also testified at first that Mrs. Rogers had brought her car to a stop, but later she qualified her testimony by saying "I think she came to a stop." But appellee Compton testified that Mrs. Rogers stopped suddenly after her car began fish-tailing—that is, the rear end of her car swerved from side to side before coming to a stop. Under these circumstances we believe that questions of negligence and proximate cause were not established as a matter of law in Mrs. Rogers' favor. Lovell v. Stanford, 386 S. W.2d 755 (Tex.Sup.1965); Griffin v. Superior Insurance Co., 161 Tex. 195, 338 S.W.2d 415 (1960); Dallas Transit Co. v. Young, 370 S.W.2d 6 (Tex.Civ.App., Dallas 1963, writ ref'd n. r. e.). We sustain appellants' sixth point.

The judgment of the trial court is reversed and the cause remanded for another trial.