Rolan James DUPREE et al., Appellants,

v.

Leonard BLACKMON, Appellee.

No. 7339.

Court of Civil Appeals of Texas, Beaumont.

May 11, 1972.

Rehearing Denied June 1, 1972.

———•———

John H. Seale, Jasper, Bill A. Martin, Newton, for appellants.

Mehaffey, Weber, Keith & Gonsoulin, Beaumont, for appellee.

STEPHENSON, Justice.

This is an action for damages arising out of an automobile-motorbike collision. Judgment was rendered for defendant upon the jury verdict. The parties will be referred to here as they were in the trial court.

Plaintiff is Rolan James Dupree who was twelve years of age and a passenger on the motorbike. Defendant is Leonard Blackmon, driver of the automobile. The jury found the drivers of both vehicles guilty of negligence which was a proximate cause of the collision. The jury failed to find that the negligence of the driver of the motorbike was the sole proximate cause and they failed to find plaintiff guilty of contributory negligence.

The jury also answered "none" to plaintiff's damage issue. It is this answer which is the sole basis of this appeal by plaintiff. It is contended that there is no evidence to support such jury finding and that such finding is against the great weight and preponderance of the evidence.

Inasmuch as the complaint before us involves the failure of the jury to find an amount of money in answer to the damage issue, the no-evidence point becomes immaterial. If this court should find that there was no evidence to support the jury's answer to this issue, it could do no more than to remand the case, as rendition

would be impossible. For that reason, we consider only the great weight and preponderance point of error and in doing so, we look to the entire record. During oral argument, counsel for defendant suggested to this court that a different rule applies to the situation before us—that is where a jury fails to find and a situation in which a jury makes a finding. An extensive study has been made into this intriguing subject and we have concluded the rule is the same in both instances. The question as to burden of proof has no bearing upon a determination as to whether a finding of a jury, or a failure to find, is clearly wrong or manifestly unjust. We have also concluded that no different rule is applicable simply because this is the damage issue.

The damage issue is in the usual form with the instruction by the court to the jury that it could consider physical pain and mental anguish in both the past and future and loss of earning capacity. This issue was not preceded by one asking whether plaintiff sustained an injury. There are no objections to the court's charge in our record and no requested issues.

The collision in question occurred August 25, 1970, on a blacktop road in Newton County. Gene Edgar testified: That he was sixteen years old and was the driver of the motorbike. That plaintiff was riding on the back of the motorbike at the time of the collision. That they were traveling along between forty and forty-five miles per hour when defendant, who was meeting them, turned his pickup truck sharply in front of them. That he (Edgar) put on his brakes and reduced his speed "[a] little bit" at the time they collided. That both he (Edgar) and plaintiff were thrown off the motorbike. He (Edgar) received some injuries to his arm in the accident.

Plaintiff testified: That he was thirteen years of age and attending Newton Junior High School. That he was riding on the motorbike behind Gene Edgar and was thrown off by the impact with defendant's

pickup truck. That he was taken by an ambulance to see Dr. Bussey in Newton. That he was taken to the hospital, treated, and released to go home. That both knees were cut and hurt in the accident. Dr. Bussey put eight to ten stitches in his knee which were later removed by his mother. That he had no other injuries. That he went back to Dr. Bussey one or two more times and later went to see Dr. Dickerson a time or two. That he has had more trouble with his right knee and had no trouble with it before the accident. He missed several days of school right after this happened and has laid off from school since because of his knee. His knee is still giving him trouble after a little over a year. The limping he did coming to the witness stand was because of his knee. He gets pain in his knee when he is in action —sharp pain starts going through it. His knee gives him trouble sleeping at night. He wakes up and goes in to tell his mother it is hurting him. He is trying to play football this year and sometimes he cannot play right. His knee has affected how fast he can run. He played a little football last year when his knee was not hurting. He rides a bicycle, runs, swims, fishes, plays in the woods and does mostly everything the other boys do. He passed all of his courses in school including P.E.

Chrystal Wagnon testified: That she is plaintiff's mother and is employed as a nurse in surgery, emergency and O.B. Her son was in good condition before this accident and there was nothing wrong with his right knee or any other part of his body. She found about the accident when it occurred and ran out to stop the ambulance and ride to the hospital with her son. He was complaining of his right knee. That she was there when Dr. Bussey sewed up his knee. The stitches were to suture a superficial flesh wound. She had had experience and removed the stitches later. Her son went back to Dr. Bussey a couple more times and saw Dr. Dickerson three or four times. Her son had and does complain of pain in his right knee. His

sleeping has been affected and he will come into her room in the middle of the night because of the pain. She gives him two aspirin and takes him back to bed. His limping is a periodic thing, depending on his activities. He may be "stiff as a board" for two or three days. He is not a "complainer or a cryer." He plays football and ball and swims and runs but is not able to do these things as "good now as he could before." He has determination and as a practical matter, he does all of the things he did before. Both doctors said not to tie him down but to let him go.

Defendant testified: That he was driving the pickup truck which collided with the motorbike. The first time he saw the motorbike it was between his front bumper and the door. The motorbike hung up on his bumper, the bumper swung around, and the boys tumbled off. The plaintiff was hopping around on one leg right after the accident. He knew the plaintiff and saw him limping for a couple of weeks after the accident but had not seen him limping "lately" until today.

Dr. Joe Dickerson testified: He first saw plaintiff on December 15, 1970, when he received a history of an automobile accident. Plaintiff complained of both knees but the right one was damaged most. He assumed the accident caused the injury. He found both knees to be tender and swollen. The right knee had extreme tender areas due to a relaxed ligament. The X-rays showed nothing. He saw plaintiff again February 24, 1971 and September 2, 1971 and made essentially the same findings. The plaintiff is having some pain in his knees and will have some discomfort indefinitely—for years to come. He found no total disability and that plaintiff would be able to do the same things physically that he could have done before. That plaintiff may not be able to run quite as far or stand quite as long and may have five per cent disability.

Robert E. Black testified: He is the principal of the junior high attended by

plaintiff. That the records of the school indicate that plaintiff missed thirty days of school during the 1970–1971 year as compared with eighteen days in the 1969–1970 year. That plaintiff missed August 26, 27 and 28 (Wednesday, Thursday and Friday) and September 3 and 17 after the accident. He did not observe any physical injury, disability, limping or inability to do any other physical things on the part of plaintiff. That there were 560 students in school.

Two other witnesses, a highway patrolman and a justice of the peace, testified but none of their testimony was relevant to the damage issue.

■ We are well aware that the general rule is that the weight and preponderance of the evidence is entirely for the jury and we agree that rule must not be tampered with. We emphasize, however, that this is not a case in which we are called upon to decide whether damages allowed by a jury are inadequate because in this case the jury answered "none". And, we have found no cases in which it has been suggested that the old Latin doctrine of "de minimis" had application to the damage issue.

■■ We have made a careful study of all of the cases cited to us by both parties, together with many more, and we have come to the conclusion that even though the amount of damages is ordinarily left to the discretion of the jury, they cannot ignore the undisputed facts and arbitrarily deny any recovery. We think the uncontroverted evidence as set out above shows the plaintiff suffered physical pain and mental anguish as a result of the collision in question and that the jury's answer of "none" is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

Defendant has cited two cases in which a jury answered "none" to the damage issue which were affirmed by the appellate court. Those cases are Hulsey v. Drake, 457 S.W.2d 453, 460 (Tex.Civ.App., Austin, 1970, error ref. n. r. e.) and Royal v. Cameron, 382 S.W.2d 335, 337 (Tex.Civ.App., Tyler, 1964, error ref. n. r. e.). Both of these cases involved rear-end collisions and "whiplash" injuries. The juries, were, in effect, deciding that the plaintiffs in those cases were not injured. The undisputed evidence in the case before us compels a different result. Under all of the evidence, the plaintiff was involved in a collision between a pickup truck and a motorbike traveling a little less than forty miles per hour. Defendant knew plaintiff and identified him as jumping around on one leg following the collision. The fact that plaintiff was taken to the hospital in an ambulance and his right knee sutured with eight to ten stitches leaves no doubt as to the fact that plaintiff was injured. The jury could have concluded that the injury was not serious and that plaintiff had no permanent disability in spite of the doctor's testimony. However, the fact of injury with some resulting pain and suffering is inescapable. The conclusions reached in this case are supported by the following: Lowery v. Berry, 153 Tex. 411, 269 S.W.2d 795, 796 (1954); Carrico v. Busby, 325 S.W.2d 413, 418 (Tex.Civ.App., Houston, 1959, error ref. n. r. e.); Edmondson v. Keller, 401 S.W.2d 718, 720 (Tex.Civ.App., Austin, 1966, no writ); Bolen v. Timmons, 407 S.W.2d 947, 949 (Tex.Civ.App., Amarillo, 1966, no writ); Gallegos v. Clegg, 417 S.W.2d 347, 357 (Tex.Civ.App., Corpus Christi, 1967, error ref. n. r. e.); Downing v. Uniroyal, Inc., 451 S.W.2d 279, 283 (Tex.Civ.App., Dallas, 1970, no writ); Taylor v. Dunn, 453 S.W.2d 521, 523 (Tex.Civ.App., Waco, 1970, no writ); Allen v. Compton, 461 S.W.2d 143 (Tex.Civ.App., Dallas, 1970, no writ); Montandon v. Colehour, 469 S.W.2d 222, 227 (Tex.Civ.App., Fort Worth, 1971, no writ); and Lincoln v. McCubbin, 475 S.W.2d 811, 813 (Tex.Civ.App., Texarkana, 1971, no writ).

Reversed and remanded.

KEITH, Justice (concurring).

While I concur in the result reached in this case, I do so somewhat reluctantly because I cannot easily reconcile the cases upon the subject, nor do I subscribe to all of the reasoning of the cases cited in support of the conclusion of the majority.

In this case, the jurors were instructed that they were the exclusive judges of the credibility of the witnesses and of the weight to be given to their testimony. Literally hundreds of Texas cases support the statement. West, Texas Digest, Trial, ▆▆▆▆▆▆ And, the burden was upon plaintiff to prove that he sustained an injury, this fact having been put in issue by defendant's general denial. Texas & Pacific Railway Company v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528 (1958).

The testimony in this case as to damages came from interested witnesses and through expert opinion of the physician who testified. The jury was free to reject any or all of the theories of the expert witness concerning pain and suffering on account of the claimed injuries. If the opinions expressed by experts do not comport with the jurors' ideas of sound logic, they have a right to say so. Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, 64 (1945); Simmonds v. St. Louis, B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332 (1936); Broussard v. Moon, 431 S.W.2d 534 (Tex.Sup.1968); Hulsey v. Drake, 457 S.W.2d 453 (Tex.Civ.App., Austin, 1970, error ref. n. r. e.).

Ordinarily, the testimony of an interested witness does no more than raise an issue of fact for determination by the jury.

Justice Walker, in Gevinson v. Manhattan Construction Co. of Okl., 449 S.W.2d 458, 467 (Tex.Sup.1969), stated the rule in this manner:

"The general rule is that evidence given by an interested witness, even though uncontradicted, presents an issue to be determined by the trier of fact. This rule is not without exception, however, and conclusive effect may be given to the testimony of an interested witness provided the testimony is clear, direct and positive and there are no circumstances tending to discredit or impeach the same. There is an added reason for recognizing the exception when the opposite party had the means and opportunity of disproving the testimony, if it were not true, and failed to do so. On the other hand the basis for recognizing an exception is weakened somewhat when the testimony is such that it could not readily be contradicted if untrue."

Perhaps, Justice Walker, in this quotation, has given us the key to use in reconciling the two lines of cases which confront us when we come to apply the law to the facts of this case as well as the reported cases which will be discussed.

As pointed out by Justice Stephenson, there are at least two cases wherein a denial of damages after a finding of liability was affirmed upon appeal. Hulsey v. Drake, supra (457 S.W.2d 453, 460), and Royal v. Cameron, 382 S.W.2d 335, 337 (Tex.Civ.App., Tyler, 1964, error ref. n. r. e.). Both were cases involving cervical sprain or the so-called "whiplash" syndrome. In each case the plaintiff testified to pain of a subjective nature and the medical evidence offered in support thereof was, at least, equivocal in nature. It could well be said of each case: The defendant did not have the means and opportunity of proving that the plaintiff did not have pain and could not readily contradict such testimony.

Here objective, not subjective, complaints were involved. Whether the minor plaintiff sustained a cut on his knee could have readily been disputed by defendant by the simple expedient of tendering the hospital records and the treating doctor who, incidentally, was not tendered by plaintiffs. The testimony of the plaintiff is clear, direct and positive that he did in fact sustain cuts upon his knee requiring stitches and "there are no circumstances tending to discredit or impeach the same"; and, defend-

ant, with "the means and opportunity of disproving the testimony, if it were not true, . . . failed to do so." *Gevinson,* supra.

On the other hand, there are many cases cited by Justice Stephenson which hold that once an injury has been shown and liability fixed, a jury's answer of "none" to the damage issue will not be permitted to stand. The leading case is that of Lowery v. Berry, 153 Tex. 411, 269 S.W.2d 795 (1954), where the injuries to the minor "were unquestionably very serious."

Under all of the evidence in this case, the plaintiff was involved in a collision between a pickup truck and a motorbike. Defendant knew plaintiff and saw him jumping around on one leg following the collision. The fact that plaintiff was taken to the hospital in an ambulance and his right knee sutured with eight to ten stitches leaves no doubt as to the fact that plaintiff was injured. The jury could have concluded that the injury was not serious and that plaintiff had no permanent disability in spite of the doctor's testimony. However, the fact is inescapable that he did have *some* injuries visible to a layman, objective in nature, and of a type ordinarily accompanied by pain. Liability having been fixed by other issues in the charge, and "[t]he undisputed facts disclosed that [s]he did suffer damages," the jury's answer was without support in the evidence and must be disregarded. Lowery v. Berry, supra (269 S.W.2d at 797).

By using the rationale of *Gevinson,* supra, I am able to reconcile the two lines of cases and, in so doing, arrive at the following rule which seems to me to be compatible with the law on the subject:

If the plaintiff has objective symptoms of injury, i. e., a cut or laceration of his body as in this instance, and there is readily available testimony which the defendant could offer to refute such fact, plaintiff's evidence cannot be disregarded by the jury when the defendant fails to refute it.

On the other hand, if plaintiff's complaints are subjective in nature, i. e., headaches, which the defendant may not readily dispute, then the negative answer of the jury to the damage issue will not be disturbed when it rests upon the testimony of plaintiff alone.

If these rules which I have postulated state correctly the sense of the holding in this case, I concur in the reversal of the judgment and remand of the cause. If, on the other hand, the holding is that plaintiff's subjective complaints, even when supported by medical opinion, are sufficient to deprive a jury of the right to pass upon plaintiff's credibility, I disagree with such holding.