**Mary Lynda SANSOM, Appellant,**

v.

**PIZZA HUT OF EAST TEXAS, INC., Appellee.**

**No. 1378.**

Court of Civil Appeals of Texas, Tyler.

April 30, 1981.

Rehearing Denied June 11, 1981.

Jerry L. Calhoon, McDonald, Calhoon & Kolstad, Palestine, for appellant.

Mike Hatchell, William V. Jeffus, Ramey, Flock, Hutchins, Jeffus, McClendon & Crawford, Tyler, for appellee.

SUMMERS, Chief Justice.

This is a suit for personal injuries sustained by appellant, Mary Lynda Sansom, resulting from a fall on the parking lot of a Pizza Hut Restaurant in Palestine, Texas, on June 15, 1976. Appellant injured her ankle when she stepped into a hole in the parking lot, causing her to fall. The Pizza Hut in Palestine is operated by Pizza Hut of East Texas, Inc.

Trial was to a jury which, in response to special issues submitted, found that Pizza Hut of East Texas, Inc. was negligent in failing to repair the hole and that appellant failed to keep such a lookout as a person using ordinary care would keep, that both were a proximate cause of the occurrence and, under the comparative negligence statute,[1] found that each party should be attributed fifty percent of the negligence. The jury also answered a six-part damage issue partially in favor of appellant, finding that she was entitled to an award of $1,000.00 for the loss of her household services in the past, yet answered zero to all other portions of the issue. Additionally, the jury found that appellant was entitled to an award of $2,000.00 for past medical treatment.

In accordance with the jury's verdict, the trial court entered a judgment that appellant recover from appellee the sum of $1,500.00.[2] It also ordered that appellant recover nothing of and against Pizza Hut, Inc. which is not a party to this appeal. In its motion for new trial, appellant assailed the judgment on the verdict on the grounds

---

1. Tex.Rev.Civ.Stat.Ann. art. 2212a (Vernon 1973).

2. Being 50% of the total damages awarded since the jury found appellant to be 50% negligent. (Recovery has been allowed in Texas under our modified comparative negligence statute when the plaintiff and defendant are found to be equally negligent as in this instance. *See e. g., Leyva v. Smith*, 557 S.W.2d 169 (Tex.Civ.App.—San Antonio 1977, no writ); *Gonzales v. Reyes*, 564 S.W.2d 100 (Tex. Civ.App.—San Antonio 1977, no writ) and the numerous authorities cited therein.)

that the jury's finding that appellant was entitled to zero damages for certain injuries was so contrary to the overwhelming preponderance of the evidence as to be clearly wrong and manifestly unjust. This motion was overruled by operation of law.

Reversed and remanded.

Appellant has brought forward four legal and factual sufficiency points of error. She contends that the trial court erred in failing to grant her motion for new trial on the grounds that the jury's finding of zero damages for physical pain and suffering in the past was so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust and because it was established as a matter of law that she suffered physical pain in the past. Similar attacks are made on the jury's answer of zero damages for mental anguish in the past.

■ Initially we note that we may only consider appellant's factual sufficiency points, those complaining that the court's ruling is against the great weight and preponderance of the evidence, because, if any of the points are sustained, the case must be reversed and remanded rather than rendered inasmuch as we would not be permitted under the law to furnish an amount for damages and thereby substitute our finding for that of the jury. *Bittick v. Ward*, 448 S.W.2d 174 (Tex.Civ.App.—Beaumont 1969, writ ref'd n. r. e.); *see generally*, O'Connor, *Appealing Jury Findings*, 12 Hou.L.Rev. 65 (1974). Therefore, appellant's second and fourth points of error (alleging legal insufficiency) are overruled. In reviewing a jury finding upon a factual sufficiency assignment, we must consider the entire record, both that which is favorable to the verdict and that which militates against it and set the verdict aside and remand the cause for a new trial if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

The accident in question occurred when appellant was returning to her car after having eaten at the Pizza Hut late in the evening. The appellant testified that she had not previously seen the hole in the lot which was close to the door on the driver's side of her car. As she approached the car she stepped into the hole and fell to the ground, twisting and injuring her ankle in the process. Unable to get up, the restaurant manager, Patricia Jo Bates, was summoned and went to her assistance. Ms. Bates testified that when she came out of the Pizza Hut and saw appellant lying on the ground she appeared to be in pain. The appellant could not drive herself home so Ms. Bates drove appellant's car to her home for her and helped her to the door since she could not walk unassisted. When asked to describe how appellant appeared as Ms. Bates was helping her to the door, Ms. Bates stated, "Her ankle was definitely swollen because I looked at it and it appeared to be badly sprained and she was definitely in pain."

Kathy Sue Fritzie, a neighbor, testified that appellant was having a birthday party for her son shortly after the accident and asked her to pick up the birthday cake and trimmings for the affair. She stated that when she delivered those items to the Sansom home appellant's foot was blue and swollen. She additionally testified that she had seen appellant at hometown football games where appellant had trouble climbing stairs, getting up and down and walking any distance. She stated that it was apparent that appellant was in pain.

Bonnie Bess Lamb, who lived next door to appellant, testified that she became aware of appellant's injury the day after it happened. She stated that she had an opportunity to see her leg and ankle and described it as being swollen and blue. She also helped appellant with her household chores during her period of convalescence by taking care of her laundry for several weeks before appellant hired a maid. Mrs. Lamb also stated that appellant was having difficulty walking since she could not put weight on the injured foot and that after the injury she could no longer walk normally since she had to "give" for her foot.

Appellant's husband, Jimmy Sansom, testified that he examined appellant's ankle the night of the injury after he helped her into the house and that there was a large bruised spot on it. He took her to the Nan Travis Clinic in Jacksonville the next morning for x-rays. He said that she was in bed for several weeks after the accident, using crutches when she had to get out of bed out of necessity.

Appellant took the stand and testified as follows:

Q: And were you—what did your ankle feel like all this time?

A: Well it was really hurting a lot. It was swollen and it was different from anything that I had ever experienced before. It was a lot of pain.

After being examined at the Nan Travis Clinic, pain pills were prescribed. Thereafter appellant had to stay off of her ankle due to swelling which occurred even when she used her crutches. She tried to reduce the swelling and contusions with ice. Two weeks after the accident the bruises and discoloration had not gone away so appellant again contacted her doctor at the Nan Travis Clinic, worried that there might be circulation problems. On direct examination, appellant was asked:

Q: All right. Up until March of 1979, did you know what actually was wrong with your ankle?

A: No. I didn't.

Q: Up until that time when the condition was diagnosed, were you concerned at all about whether you were going to be able to get well or recover?

A: Every diagnosis that had been made said it was permanent, like it was something to live with and it sounded like permanent.

Q: All right. Did that cause you any concern?

A: Yes. It did.

Q: Did you worry any?

A: Pardon me?

Q: Did it cause you any worry?

A: Yes, it did.

Q: Now then, the things you've been unable to do with your husband, just for example, the many trips that he's outlined for us that you weren't able to go on, has that been of any concern to you?

A: Yes. It has because we've always done things together and usually when he goes to a meeting, they have activities planned for the wives. If it's in Washington, you tour Washington. You see things that would cost you a lot of money if you were paying for it. And if it involves walking, I simply could not participate in that and I didn't go.

Q: As far as being able to dress appropriate and to the occasion, have you had instances in this past three years that you were not able to dress as you feel you should have?

A: Yes. I have.

Dr. Francis Leon Ware, a surgeon and certified orthopedic specialist practicing at the Baylor Hospital in Dallas testified by deposition. He examined appellant December 18, 1978, x-rayed her foot and ankle and concluded that there was possibly pressure on a nerve in the foot in an area known as the "tarsal tunnel" but chose to follow a conservative course of treatment. At that time, two and one-half years after the accident, Dr. Ware stated that appellant's ankle did not exhibit signs of swelling nor were there atropic changes in the skin in that area. He instructed her to see him again on March 5, 1979. When he again examined her on March 5th he ordered that electrical tests be conducted to determine whether there was nerve damage. Dr. Edward Krusen, a physical rehabilitation specialist at the Baylor Hospital examined appellant on March 6th at the instance of Dr. Ware. Dr. Krusen also testified by deposition. During his preliminary examination he found that appellant had lessened sensation on the lateral sole of her foot than she

did on the medial or inside portion; she was limited in range of motion at the ankle, particularly dorsiflexion (raising of the foot and turning it in and out); she was tender behind the medial side of the ankle behind the bony prominence (the medial malleolus); and that she was experiencing some crepitus or creaking and cracking with ankle motion. Dr. Krusen then conducted an electromyogram and conduction studies to test for nerve damage or for an entrapped nerve. He concluded that appellant was suffering from what he termed tarsal tunnel syndrome resulting from an entrapped plantar nerve and recommended surgery to alleviate the attendant pain which appellant was suffering which surgery was ultimately performed on July 16, 1979.

The appellee's doctor, Dr. P. M. De-Charles, who had been specializing for 29 years in orthopedics, examined appellant on February 22, 1979, two years and eight months after the accident. He conducted orthopedic and neurological examinations and found normal contour of both ankles, no swelling or deformity. He made x-rays of the ankle which revealed no pathology. Following his examination of appellant he expressed his opinion, based on reasonable medical probability, that there was nothing neurologically or orthopedically wrong with appellant's left ankle and there were no clinical or objective findings as of February 22, 1979, which could substantiate her subjective complaints.

Issue No. 6 of the court's charge and the jury's answers to its various subdivisions are as follows:

### QUESTION NO. 6

What sum of money if now paid in cash do you find from a preponderance of the evidence would reasonably and fairly compensate Lynda Sansom for her injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

Answer separately in dollars and cents, if any, with respect to each of the following elements:

(a) Physical pain in the past.

Answer: 0

(b) Mental anguish in the past.

Answer: 0

(c) Physical pain which, in reasonable probability she will suffer in the future.

Answer: 0

(d) Mental anguish which, in reasonable probability she will sustain in the future.

Answer: 0

(e) Loss of household services in the past.

Answer: $1,000.00

(f) Loss of her capacity to perform household services which, in reasonable probability will be sustained in the future.

Answer: 0

Issue No. 7 was also submitted to and answered by the jury as follows:

### QUESTION NO. 7

Find from a preponderance of the evidence the reasonable expenses, if any, for necessary medical and hospital care received by Lynda Sansom in the past for treatment of her injuries resulting from the occurrence in question.

Answer in dollars & cents if any.

Answer: $2,000.00

Appellant in her first and third points of error claims that the trial court erred in overruling her motion for new trial because the jury's answers to subdivisions (a) and (b) of Special Issue No. 6 were against the great weight and preponderance of the evidence. After carefully examining the record before us in the manner directed by *In re King's Estate, supra,* we agree with appellant's first and third contentions and sustain them.

■ We are mindful of the general rule that it is the province of the jury to weigh the evidence and to determine the credibili-

ty of the witnesses, *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191 (Tex.1966), but here, based upon the testimony presented to them, the jury failed to award any damages for pain and suffering or mental anguish yet found that appellant *did* suffer an injury. The fact that they felt she was injured is made manifest by an examination of the issues answered favorably to appellant. In reply to subdivision (e) of Special Issue 6 the jury found that $1,000.00 would adequately compensate her for the loss of household services in the past *which resulted from the injury.* The jury also awarded appellant $2,000.00 for reasonable and necessary medical and hospital expenses incurred as a result of the injury.

To uphold the jury's finding that appellant is entitled to nothing for past pain, suffering and mental anguish, we would be required to hold that it was established by a preponderance of the evidence that appellant's injury, including its accompanying contusions, swelling, and debilitating effects necessitating the reasonable expenses of her medical treatment were unaccompanied by any pain and suffering and mental anguish. *Fuller v. Flanagan*, 468 S.W.2d 171, 178 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n. r. e.); *Gallegos v. Clegg*, 417 S.W.2d 347, 357 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.). We are unable to do so based upon the record before us. The evidence outlined above clearly shows that appellant did suffer past pain, suffering and mental anguish. It has been established that appellant did suffer an injury and, while the jury may have concluded that the injury was not serious, the conclusion that a degree of pain, suffering and mental anguish resulted therefrom is inescapable.

We are not here presented with a question of the inadequacy of damages, but we are called upon to determine whether the complete denial of any damages was, in light of the evidence, proper. No case nor any other authority has been presented to us suggesting application of the *de minimus*

doctrine to the damage issue. *Gallegos v. Clegg, supra* at 356.

Although the amount of damages is ordinarily left to the discretion of the jury, they may not ignore the undisputed facts and arbitrarily deny any recovery. *Bazzano v. Ware*, 530 S.W.2d 650, 651 (Tex. Civ.App.—Beaumont 1975, writ ref'd n. r. e.); *Horn v. State Farm Ins. Co.*, 567 S.W.2d 266, 268 (Tex.Civ.App.—Tyler 1978, no writ). There is nothing in the record controverting the fact that appellant did suffer some injury and a jury is not free to disregard the fact that an injury has occurred and find no damage. *Lowery v. Berry*, 153 Tex. 411, 269 S.W.2d 795, 797 (1954); *Nye v. W & L Co., Inc.*, 519 S.W.2d 142, 143 (Tex.Civ.App.—Amarillo 1975, writ ref'd n. r. e.); *Cavitt v. Jetton's Greenway Plaza Cafeteria*, 563 S.W.2d 319, 324 (Tex. Civ.App.—Houston [1st Dist.] 1978, no writ). The finding that appellant is not entitled to any damages for past pain and suffering and mental anguish is so against the great weight and preponderance of the evidence as to be manifestly unjust because the uncontroverted evidence discloses that appellant did suffer some damages. *Edmonson v. Keller*, 401 S.W.2d 718, 720 (Tex. Civ.App.—Austin 1966, no writ). *See generally*, Roth, *Inadequate Damages as Basis for New Trial*, 44 Tex.B.J. 369 (1981).

Appellee contends that the jury was free to disregard the medical opinions of Drs. Ware and Krusen that appellee was suffering from tarsal tunnel syndrome. This argument misses the mark. Although the jury may indeed not have believed that appellee's malady was caused by that condition, there is clear, uncontroverted evidence that an injury did occur which was exhibited by bruising and swelling and the jury found that appellant was injured. Four witnesses, including appellee's restaurant manager, attested to that fact. Whether her complaint was caused by the entrapment of a plantar nerve in her foot would be important only insofar as determining the amount of damages to be awarded.

■ Appellee then contends that appellant's complaints regarding pain and suffering and mental anguish are merely subjective in nature and supported only by interested testimony, the credibility of which was to be assessed by the jury. Appellee then endeavors to distinguish each case cited by appellant on that basis. However, this polemic fails to recognize that objective as well as subjective symptoms are involved. Whether appellant did suffer from swelling, bruising, discoloration and the like as attested to by her witnesses, could have been readily disputed by appellee. Appellant's own testimony is clear, direct, and positive in this regard and appellee had the means of refuting this testimony if untrue but failed to do so. In this regard, we are in full accord with Justice Keith's carefully reasoned concurrence in *DuPree v. Blackmon*, 481 S.W.2d 216, 221 (Tex.Civ.App.—Beaumont 1972, writ ref'd n. r. e.) which is factually similar to our case and cited by appellee in its brief. Therein, he proffered the following analysis:

> If the plaintiff has objective symptoms of injury, i. e., a cut or laceration of his body as in this instance, and there is readily available testimony which the defendant could offer to refute such fact, plaintiff's evidence cannot be disregarded by the jury when the defendant fails to refute it.

> On the other hand, if plaintiff's complaints are subjective in nature, i. e., headaches, which the defendant may not readily dispute, then the negative answer of the jury to the damage issue will not be disturbed when it rests upon the testimony of plaintiff alone.

Here, as in *DuPree*, appellant's complaints were referable to objective symptoms unrefuted by the appellee which could not be ignored by the jury in arriving at its assessment of damages. We cannot agree with appellee that this case like *Royal v. Cameron*, 382 S.W.2d 335 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.) and *Hulsey v.*

*Drake*, 457 S.W.2d 453 (Tex.Civ.App.—Austin 1970, writ ref'd n. r. e.) falls squarely within the terms of the second alternative. Those cases involved rear-end collisions and "whiplash" injuries. The juries there decided that the plaintiffs suffered no injuries. Here, the jury decided that the plaintiff was injured and there were objective manifestations of that injury entitling her to some damages.

■ Accordingly, we hold that the jury's answer of zero damages for pain and suffering and mental anguish in the past are so against the great weight and preponderance of the evidence as to be manifestly unjust and sustain appellant's first and third points of error. The case is reversed and remanded for a new trial.