**Jackie BLOUNT, Appellant,**

v.

**James Michael EARHART, Appellee.**

**No. 1550.**

Court of Appeals of Texas,
Tyler.

Sept. 1, 1983.

Coy Johnson, Smith, Johnson & McDowell, Sulphur Springs, for appellant.

James H. Moody, III, Strasburger & Price, Dallas, for appellee.

SUMMERS, Chief Justice.

This is an action seeking damages for personal injuries arising out of an automobile collision. Trial was to a jury which returned a verdict upon special issues finding appellee guilty of several acts of primary negligence that were the proximate cause of the collision. The jury also failed to find that appellant was injured as a result of the occurrence or suffered any past or future damages resulting from such accident.[1] Based upon the jury's verdict, judgment was rendered for appellee Earhart (defendant); from such adverse judgment appellant Blount (plaintiff) has perfected this appeal.

We affirm.

The record reflects that appellant Jackie Blount at about 10:00 a.m. on January 18, 1978, was driving his car southbound on a long, icy bridge on Highway 154 between Sulphur Springs and Quitman. Appellee James Michael Earhart, while also traveling southbound on Highway 154, struck the rear end of Blount's vehicle.

Appellant Blount brings his appeal based on three points of error challenging the jury's answers to the last three issues. In his first point appellant contends that the trial court erred in overruling Blount's motion for new trial because the jury's answer to special issue No. 4 is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust in that the evidence is clear that Blount did sustain an injury as a result of the collision in question. In considering this point we look to the entire record, both that which is favorable to the verdict and that which militates against it and set the verdict aside and remand the cause for new trial only if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

It is appellant Blount's contention that at the time of the accident he was in good health, suffering from none of the injuries and disabilities which were allegedly inflicted upon him as a result of appellee's negligence, but that after the accident, and as a result thereof, he suffered numerous disabling back, leg and elbow injuries. He testified that he had visited several doctors regarding his physical maladies; that he saw a Dr. Longino the day after the accident and was given a shot of cortisone in his back, two prescriptions to reduce swelling in his neck and a muscle relaxant for his shoulders and back. Appellant further testified that he saw Dr. Longino several other times for treatment and saw Dr. Evans, a chiropractor, three times in 1978 and six times in 1979. The records of Dr. Galt, a Dallas physician, whom appellant had regularly seen since 1953, were introduced by appellee. Such records showed that on April 13, 1978, approximately three months after the accident, appellant visited Dr. Galt and stated, "I'm doing so well I'm scared to comment". Blount also indicated to Dr. Galt at this time that he was being productive and was sleeping well. Blount then visited Dr. Bahm in September of

---

1. The jury's answers to the special issues submitted were:

The jury in Special Issue No. 1 found Earhart was negligent in his lookout, in his speed, and in the application of his brakes, and that such negligence was a proximate cause of the occurrence in question. In Special Issue No. 2 the jury found that Earhart failed to maintain an assured clear distance between his vehicle and the vehicle driven by Blount. In Special Issue No. 3 the jury found that such failure by Earhart was the proximate cause of the occurrence in question. In response to Special Issue No. 4 the jury failed to find that Blount was injured as a result of the occurrence in question. In Special Issues Nos. 5 and 6 the jury failed to find any actual damages or future damages for medical care resulting from the collision in question.

1978, complaining of injuries to his back, left leg and right elbow from the January 1978 accident. Dr. Bahm performed various reflex, strength and movement tests on Blount, but obtained no objective findings to support Blount's subjective complaints. Based solely on Blount's statements, Dr. Bahm diagnosed a back strain and prescribed an exercise program for Blount, and instructed Blount to return if his condition did not improve. On February 14, 1979 Blount again visited Dr. Galt complaining of back trouble which Blount attributed to the January, 1978 accident. Dr. Galt's report regarding this visit reflects that from his examination, he was unable to find any neurological or disc deficit. Dr. Galt's records also revealed a 1963 instance of shoulder discomfort which could not be confirmed by objective tests and his report also noted Blount's "psychosomatic problems."

The record further reveals that in October of 1979, Blount fell on the courthouse steps in Quitman, knocking himself unconscious and causing a concussion as well as bruises and abrasions of his face and hand. As a result of this fall Blount was hospitalized for two days. The exact cause of the fall was disputed at trial. The hospital records indicated that Blount had stated that he had fallen, apparently slipping on wet pavement. However, at trial Blount's statements were that his leg had given way beneath him. The record also reflects a traumatic injury of some sort to the lower chest in August of 1979.

Blount again visited Dr. Bahm on February 28, 1980 telling the doctor that he had done well since his last visit in 1978 and had continued to work, but his problems had apparently started again in October of 1979. Dr. Bahm at this time, based upon certain objective clinical findings not present at the time of the earlier examination, diagnosed a ruptured disc on the back and recommended that Blount "modify his activity" with surgery to follow if his condition did not improve.

Dr. Bahm, was the only doctor to testify at the trial. He was not asked on direct examination whether the findings made by him in February, 1980 were attributable to the 1978 accident as Blount urges was the case. However, on cross-examination, the question of causation for these findings was thoroughly explored and Dr. Bahm repeatedly testified that it was reasonably probable that the back problem which he diagnosed in 1980 was the result of the 1979 fall in Quitman.[2]

2. The relevant portion of Dr. Bahm's testimony is as follows:

Q. Now, with that history of having slipped on wet pavement and fallen on the ground and then coming to you and complaining about the episode, would it be your opinion that his back problem that you saw in February of 1980 was the result of that fall where he slipped on wet pavement?

A. It could have been.

Q. All right. It's certainly a reasonable probability, isn't it?

A. Yes, sir.

*     *     *     *     *     *

Q. Isn't it reasonably probable, doctor, that his back condition you saw in February, 1980, and the objective findings you saw at that time is the result of the fall when he slipped on wet pavement in Quitman, Texas?

A. Can you rephrase the question? I got lost in the shuffle.

Q. All right, sir. Isn't it probable, doctor, that the objective findings that you made in your examination of February, '80, and Mr. Blount's then condition resulted from when he fell, slipped on wet pavement over there in Quitman in October of 1979?

A. It's probable that it happened as a result of that episode, yes, sir.

Q. It is probable that it happened as a result of that episode?

A. Yes, sir.

Q. Because you saw him in September of 1978 and you didn't have any objective findings then, did you?

A. Had no objective findings at that time.

Q. The only thing at that time were the complaints that he had made?

A. Yes, sir.

Q. And you found nothing objectively to support any kind of disc involvement at that time?

A. Yes, sir.

Q. Is that right, sir?

A. Yes, sir.

Q. Now, in February of 1980, let's get your report out that you did on that.

A. (Indicating)

Q. Down here in the last sentence it says, "He is quite busy at this time." Is that what he told you?

A. Yes, sir.

Our review of the record shows that Blount visited: Dr. Longino, his family doctor, on the day after the January 1978 accident; Dr. Galt, his long-time physician in Dallas, some four months after the January 1978 accident; Dr. Bahm, an orthopedic surgeon, many months after the accident; and a Dr. Evans, a chiropracter, on several occasions. Dr. Bahm was the only doctor called to testify at the trial. The records of Drs. Longino and Evans were not introduced by Blount. Appellee Earhart introduced the records of Dr. Galt.

The jury failed to find that Blount was injured as a result of the 1978 automobile collision. In *Smith v. Safeway Stores, Inc.,* 433 S.W.2d 217, 218–219 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.), wherein there was a challenge to the jury's failure to find that the plaintiff suffered an injury, the court stated:

> The question of whether or not appel-lant received an injury became a contro-verted issue of fact by appellee's general denial. Proof of injury was therefore essential to appellant's cause of action. Consequently, *appellant had the burden of securing a favorable finding upon such issue. As stated, the jury answered the question in the negative.*
>
> *A negative answer to the issue,* when properly interpreted, amounts to nothing more than a failure or a refusal by the jury to find from a preponderance of the evidence that appellant sustained an injury and *means, in law, that appellant failed to discharge the burden of proving the fact.* It does not mean that the jury found that she did not sustain an injury. It simply means that the jury was not persuaded by a preponderance of the evidence.
>
> In situations such as this where a jury returns a negative answer to an issue upon which the proponent has the burden of proof, *the jury's negative answer need*

*not be supported by affirmative evidence.* Therefore, it avails the complaining party nothing to assert that a negative answer is without support in the evidence or is not supported by factually sufficient evidence. Under these circumstances, *the complaining party is placed in the position of having to contend that the evidence establishes an injury as a matter of law.* (Emphasis added.)

*Accord, e.g., Visage v. Marshall,* 632 S.W.2d 667 (Tex.App.—Tyler 1982, writ ref'd n.r. e.); *Pouncy v. Garner,* 626 S.W.2d 337 (Tex. App.—Tyler 1981, writ ref'd n.r.e.). Blount does not contend that the jury's answer to Special Issue No. 4 is without support in the evidence or is not supported by factually sufficient evidence. Nevertheless, his contention in his first point that the jury's answer to such issue is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust requires a review of all the evidence in the record.

In *Sansom v. Pizza Hut, Inc.,* 617 S.W.2d 288 (Tex.Civ.App.—Tyler 1981, no writ), this court reviewed the standards to be applied when a jury finds a negligently caused accident but fails to find any damages, or finds only certain elements of damage. Quoting with approval from Justice Keith's concurrance in *Dupree v. Blackmon,* 481 S.W.2d 216, 221 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.), the court stated:

> If the plaintiff has objective symptoms of injury, i.e., a cut or laceration of his body as in this instance, and there is readily available testimony which the defendant could offer to refute such fact, plaintiff's evidence cannot be disregarded by the jury when the defendant fails to refute it.
>
> On the other hand, if plaintiff's complaints are subjective in nature, i.e., headaches, which the defendant may not read-

---

Q. And it says, "And he is going to let us know in two or three weeks if he is not improved." Is that right?
A. Yes, sir.
Q. Now, did you ever see Mr. Blount again after that date?

A. No, sir.
Q. Do you assume from the fact that you have not seen him since that day that his condition in fact has improved?
A. Improved, it would seem.

ily dispute, then the negative answer of the jury to the damage issue will not be disturbed when it rests upon the testimony of plaintiff alone.

■ The rationale of *Dupree* as set forth above is applied only when the causation of the injury has been satisfactorily established. Such reasoning is not applied where, as in the instant case, the jury fails to find causation and the evidence shows the cause of the alleged injury was an occurrence other than the 1978 automobile collision.

■ Blount was unsuccessful in establishing the causal connection between the 1978 automobile collision and his alleged injuries. The results of the 1980 examination by Dr. Bahm (over two years after the 1978 collision and five months after his 1979 fall) were the only objective evidence of injury presented by Blount. The jury was entitled to conclude that these findings were traceable to events other than the 1978 collision. The only other evidence presented by Blount concerning his injuries was his own subjective complaints regarding pain and suffering, which the jury was entitled to disregard altogether, e.g., *Middleton v. Palmer*, 601 S.W.2d 759, 765–766 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.); *Dupree, supra* at 221; *Heckathorn v. Tate*, 355 S.W.2d 845, 846 (Tex.Civ.App.—Amarillo 1962, no writ), and the testimony of Dr. Bahm regarding his 1978 examination, in which Dr. Bahm stated that he made no objective findings and that his diagnosis was completely dependent upon Blount's subjective complaints.

■ Dr. Bahm testified explicitly that he could find no objective symptoms during the 1978 physical examination of Blount, and made the diagnosis of back strain at that time, based solely on Blount's subjective history. A diagnosis based solely on the patient's subjective complaints does not constitute an "objective factor" sufficient to warrant reversal of the jury's failure to find injury. Compare *Hammond v. Estate of Rimmer*, 643 S.W.2d 222 (Tex.App.—Eastland 1982, writ ref'd n.r.e.); *Middleton v. Palmer, supra* at 765–766. See *Fillyaw v.*

*City of Beaumont,* 564 S.W.2d 139, 141–142 (Tex.Civ.App.—Beaumont 1978, no writ).

■ While Earhart's car, being made of easily damaged fiberglass, was severely damaged, Blount's car remained in driveable condition and Blount resumed his trip on to Quitman after the accident. It is for the jury to evaluate the severity of a collision and the likelihood that a particular plaintiff would or would not have suffered injuries. Such evaluation is of course in large part based upon the appearance and demeanor of the witnesses and the weight and credibility to be given to their testimony. See *Royal v. Cameron*, 382 S.W.2d 335, 339 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.). Having carefully reviewed the entire record, we conclude that there was no directly observable or "objective evidence" that the source of Blount's injury was the result of the January 1978 collision and that the jury's answer to Special Issue No. 4 was not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Blount's first point is overruled.

■ Appellant in his second and third points contends that the court erred in overruling plaintiff's motion for new trial because the jury's answers to Special Issues No. 5 and No. 6 were so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Special Issue No. 5 asked the jury to find the amounts of various elements of damage which it found from a preponderance of the evidence resulted from the occurrence in question. Special Issue No. 6 inquired as to future medical expense which Blount would incur for treatment of his injuries resulting from the collision in question. Each of these special issues depended on a finding that Blount had in fact suffered injuries as a result of the collision. In Special Issue No. 4 the jury failed to find that Blount had suffered any injury as a result of the accident, and that finding not being against the great weight and preponderance of the evidence, it follows that the jury's award of zero damages for Special Issue No. 5 and

No. 6 was correct. Appellant's second and third points are overruled.

The judgment of the trial court is affirmed.